THE STATE ex rel. JEFF D. McCUNE et al., Appellants, v. ALEXANDER CARTER et al., Constituting the Board of Equalization of Audrain County.

Division One, July 9, 1919.

1. **BOARD OF EQUALIZATION: Constitution: Certiorari.** In a *certiorari* brought to quash the record of a county board of equalization, if the record shows on its face that the officers designated by the statute were named as composing the board and that they were present at its meetings, it cannot be held that such persons were not *de jure* members of the board, or that said board was illegally organized.

2. ———: **Jurisdiction: Insufficient Notice: Appearance.** Whether or not the notice to the taxpayer that an increase in the assessed valuation of his property was sufficient, if he actually appeared before the board of equalization and the matter was continued, and before such increase was made he appeared specially and filed his objections thereto, his appearance vested the board with jurisdiction.

3. ———: **Amending Record: Classification.** Amendments of the records of the board of equalization, made prior to its final adjournment by the direction of its presiding officer, which did not change the amount of the increase in the taxpayer's assessment, but simply specified the classes of property to which it was applicable, did not oust the board of jurisdiction, or impair the validity of the increase.

4. ————: **Trebling Assessment.** The County Board of Equalization, after increasing the taxpayer's assessment to equal the amount of property owned by him, is by statute given power to treble the assessment upon a finding that he has given a false list.

5. ————: **Increasing Assessment: Certiorari.** In reviewing the action of the County Board of Equalization by *certiorari* the courts cannot go beyond the face of its record; and since under the statute it had authority to increase the assessment of the property returned by the taxpayer, and to add that omitted, if it had knowledge of facts justifying such action, it will not be held on *certiorari* that it exceeded its statutory powers, if it heard evidence before it made the increases and it is not denied that the taxpayer owned property equal to the amount of the increased valuation.

Appeal from Audrain Circuit Court.—*Hon. Ernest S. Gantt*, Judge.

AFFIRMED.

*E. A. Shannon* and *Pearson & Pearson* for appellants.

(1) Statutes imposing taxes are strictly construed against the State, and in favor of the taxpayer. 37 Cyc. 768; State ex rel. v. Alt, 224 Mo. 513; State ex rel. v. Lesser, 237 Mo. 318; State ex rel. v. Scullin, 266 Mo. 331; State ex rel. v. St. L. Co. Ct., 13 Mo. App. 54; City of Hannibal ex rel. v. Bowman, 98 Mo. App. 109. (2) A county board of equalization is a court of limited and inferior jurisdiction. Section 11402, R. S. 1909; Washington Co. v. Railroad, 58 Mo. 379. (3) Where the proceedings of inferior courts whose methods of procedure are not in accordance with the courts of the common law, are called in question, jurisdiction will not be presumed; but must of necessity appear, and be distinctly disclosed by the record, on the face of the proceeding; and can receive no help from intendments or implications. Cunningham v. Railroad, 61 Mo. 36; State ex rel. v. County Court, 66 Mo. App. 99; Rousey v. Wood, 57 Mo. App. 658. The record of such courts must show the existence of all facts necessary to

20—279 Mo.

give jurisdiction over the subject-matter, and the parties. Schell v. Leland, 45 Mo. 294; State v. Metzgler, 26 Mo. 66; Corrigan v. Morris, 43 Mo. App. 461; Fisher v. Davis, 27 Mo. App. 327. If such jurisdiction does not appear upon the face of the proceedings, their acts are void. Haggard v. Railroad Co., 63 Mo. 303. (4) The law requires, that an accurate and detailed record of the proceedings and orders of a board of equalization must be kept, showing distinctly, when it is raising the valuation of property already assessed; and, when it is adding and assessing other property "omitted from the assessor's books," designating in each instance, the "kind and class" of property raised, or assessed. Secs. 11404, 11407, R. S. 1909; State ex rel. v. Cunningham, 153 Mo. 653; Washington Co. v. Railroad, 58 Mo. 378. (5) When the valuation of property listed and assessed is raised, or property "omitted from the assessor's books" is assessed, a notice must, in either case, be served on the property owner stating the "kind and class" of property raised or assessed and the value fixed thereon by the Board; and the record of the board should show, and such notice should distinctly state whether the action of the board was on the property listed and assessed or property omitted from the assessor's books, and by it assessed for the first time. Secs. 11404, 11407, R. S. 1909; State ex rel. v. Cunningham, 153 Mo. 653; Washington Co. v. Railroad 58 Mo. 378. (6) A notice, such as the law requires to be given, on increasing the valuation of property or already assessed, or assessing property "omitted from the assessor's books," is essential to the validity of the proceeding. Sec. 11407, R. S. 1909; State ex rel. v. Springer, 134 Mo. 224. (7) A property owner does not waive his rights to a legal notice, by appearing for the sole purpose of objecting to the invalidity and insufficiency of the notice served on him, and to the jurisdiction of the board to act under the premises. His appearance for a special purpose constituted no waiver of any valid objection

which he had to the defective process and service; for a party who is in court for one purpose, is not necessarily in for any other purpose. Schell v. Leland, 45 Mo. 293; Thompson v. Ry. Co., 110 Mo. 156. (8) The board of equalization acts judicially in either raising the assessments already listed; or, in assessing property "omitted from the assessor's books." In raising the assessment of property already listed or in assessing property "omitted from the assessor's books, the board of equalization must have evidence before it, or its act will be invalid. Secs. 11406, 11407, R. S. 1909; Washington Co. v. Railroad, 58 Mo. 378; State ex rel. v. Scullin, 266 Mo. 331. The record of the proceedings of the board should contain a statement, that evidence was taken and heard in either raising assessments of property already listed, or in assessing property "omitted from the assessor's books." Washington Co. v. Railroad, 58 Mo. 378. (9) On and after the 4th Monday of April, a board of equalization ceases to act as such, but is simply a board of appeals; and has power and authority as such to hear complaints from the property owner, on the action of the board of equalization, in either raising the valuation of his property already assessed, or in assessing property "omitted from the assessor's books;" and, can only "change or alter the same, upon it being shown by the said owner that said assessment was erroneous, or improperly made; otherwise said property and the valuation as (previously) fixed by said board, shall be extended upon the assessor's books, as in case of other property." And, it has no power or authority (on its own initiative, the property owner not appearing), to hear evidence or change the valuation thitherto raised or assessed. Sec. 11407, R. S. 1909. (10) A board of appeals has no authority to treble assessments before the board of equalization shall have had a notice filed with it, by the assessor, that the property owner has made out a list "with intent to defraud," and said board shall have given notice thereof to the property owner who

shall have furnished such false list which notice was to specify the particulars in which said list is alleged to have been false. Sec. 11354, R. S. 1909; State ex rel. v. Baker, 170 Mo. 390. (11) The clerk had no right to change the record, in vacation of the board, upon the order, or at the dictation of any one. Sec. 11405, R. S. 1909; State ex rel. v. Wray, 55 Mo. App. 654; Corrigan v. Morris, 43 Mo. App. 461; State ex rel. v. Scullin, 266 Mo. 331. A change in the record, after it had been writttn up by the clerk, and a certified copy of which had been served on the property owner, was a fraud on the property owner. In doing so, it was wilfully depriving him of knowledge of the true record of the alleged board's proceedings against his property. Washington Co. v. Railroad, 58 Mo. 378. (12) "Under our system of taxation, there can be no lawful collection of a tax until there is a lawful assessment; and, there can be no lawful assessment, except in the manner prescribed by law and of property designated by law for that purpose." State ex rel. v. Lesser, 237 Mo. 318.

*A. C. Whitson* for respondents.

(1) The rule of strict construction in tax proceeding does not obtain in this State and has not since the decision of State ex rel. v. Bank, 120 Mo. 161; State ex rel. v. Timbrook, 240 Mo. 236, 238; State ex rel. v. Wilson, 216 Mo. 286; Sec. 11383, R. S. 1909. (2) The board of equalization is not a court of limited jurisdiction. Secs. 11402, 11409, R. S. 1909; Secs. 11747, 11748, R. S. 1909. It has full power and it is the duty of the board to assess and to equalize the valuation and assessment of all property both real and personal within the county. Sec. 11403, R. S. 1909; 15 C. J. 982, sec. 414, note 15. Diehl v. Page, 3 N. J. Eq. 143; William v. Ball, 52 Tex. 603; State ex rel. v. Harrison, 226 Mo. 174; State ex rel. v. Springer, 134 Mo. 212. (3) The county clerk is by the statute (Sec. 11402, R. S. 1909) made secretary of the board of equalization, and

as such had a right to correct its records to speak the truth at any time before final adjournment of the board. The board may at any time before final adjournment correct its records. State ex rel. v. Board, 108 Mo. 235; State ex rel v. Ray, 55 Mo. App. 647; Henry County v. Salmon, 201 Mo. 151; Williams v. Silvy, 84 Mo. App. 433; State v. Jeffries, 64 Mo. 376; Becker v. Schutte, 85 Mo. App. 65. The record of the board of equalization was sufficient without any correction as made by the clerk showing the classification of the property added to the assessment list. State ex rel. v. Trust Co., 261 Mo. 448. (4) The board has a right to add omitted property to the assessment list, or to assess omitted property even though no list be given. Sec. 11407, R. S. 1909; State ex rel. v. Trust Co., 261 Mo. 448; State ex rel. v. Timbrook, 240 Mo. 236. The respondent, Guy McCune, having given a false list, the board had a right to treble his assessment. Sec. 11354, R. S. 1909; State ex rel. v. Baker, 170 Mo. 391. The procedure in adding omitted property and in adding property where a false list is given is the same. In re Sanford, 236 Mo. 686. (5) The respondents having appeared before the board, the form of the notice or whether or not notice had been given at all is immaterial. On their appearance the board had jurisdiction, and by such appearance appellants waived the giving of notice and its form and such appearance cured all defects in the notice. State ex rel. v. Baker, 170 Mo. 390; State ex rel. v. Trust Co., 261 Mo. 455; State ex rel. v. Board, 108 Mo. 243; Cooley on Taxation (3 Ed.), p. 783; Smith v. Kiene, 231 Mo. 222; State ex rel. v. Galord, 73 Wis. 306; Brown v. Weatherby, 71 Mo. 152. (6) The presumption is that the board heard evidence, and that the procedure was lawful. The board has power of its own knowledge to add omitted property or to raise the valuation of property assessed. State ex rel. v. Springer, 134 Mo. 225; Hannibal Railroad v. Board, 64 Mo. 309. (7) While the board of equalization is required to hear appeals on the 4th

Monday in April, it is the same board and its labors are not necessarily to be completed at that time. Sec. 11404, R. S. 1909; State ex rel. v. Vaile, 122 Mo. 43. The record as returned by the respondents, and as proved at the trial, shows a record kept by the County Clerk of Audrain County, in "County Board of Equalization Record B, Audrain County." That the board met at the time as required by law (Sec. 11402, R. S. 1909), and was composed of the officers designated by the statute.

BOND, C. J.—*Certiorari* by the Circuit Court of Audrain County, directed to respondents, the Audrain County Board of Equalization, in their official capacity, requiring them either to have the original record and papers, or to certify to said court a true, full and complete copy of their record as made at their respective sessions, April 3rd, April 24th and May 15, 1916, together with a copy of the several demurrers or pleas in abatement to the jurisdiction of said alleged board, filed in said proceedings by appellants, Jeff D. and Guy McCune, on May 15, 1916, in order that the circuit court might adjudicate upon the legality of such proceedings.

In their petition for said writ of *certiorari*, relators state that they are residents of Vandalia, Missouri; that the respondents compose the County Board of Equalization of Audrain County; that at a certain meeting of said board on April 3, 1916, the board raised the assessment of relators, and thereafter duly notified them that the board would meet on the fourth Monday in April, 1916, "to hear reason, if any be given, why such increase should not be made;" that on April 24, 1916, said hearing was continued until May 15th; that on May 12th, relators, with their attorney, examined the record of said board, and thereupon each had prepared and thereafter filed, a demurrer to the jurisdiction of said board, on the ground that its action was illegal and void for not setting out the class and kind of property and the amount raised on

each, as required by law; that sometime between May 12th, the date on which they examined the record of the board, and May 15th, the date to which their hearing was continued, the record of said board dated April 3rd, "was altered, mutilated and changed by some one other than the Clerk of the County Court of Audrain County."

At the trial the record of the board, which was introduced in evidence, showed that on April 3, 1916. the board met; that among other business transacted, the board raised the assessment of Guy McCune, Jeff McCune and of Guy and Jeff McCune as follows:

"Personal Raised. Jeff D. McCune—from $500 to $75,000 ($74,500 in money, notes and bonds; classes 5-6-7-8-9; $500 all other personal. Mayor and city assessor not voting).

"Jeff and Guy McCune—from $100 to $15,000 (Money, notes and bonds; classes 5-6-7-8-9. Mayor and city assessor not voting).

"Guy McCune—$650 to $4,000 ($3,350 money, notes and bonds. Classes 5-6-7-8-9, and $650 all other personal. Mayor and city assessor not voting)."

The following also appears in the records of the board of date Monday, April 24, 1916.

"County Board of Equalization met pursuant to adjournment with J. W. Beagles, C. C. Bledsoe, Judges of the County Court, and T. J. Kelso, County Assessor, J. W. Dry, Ex-mayor of the City of Mexico and J. T. Marshall, Assessor of the City of Mexico, present and the following business was transacted, to-wit:

"Presiding Judge Alex Carter being absent Judge C. C. Bledsoe was elected to preside over the meeting by the board. Jeff D. McCune appears before the board and on his application and by order of the board the hearing of his protest on increase of assessment was continued to Monday, May 15, 1916.

"Guy McCune appears before the board and on his application, and by order of board the hearing of his protest on increase of his assessment was continued to Monday, May 15, 1916.

"Jeff and Guy McCune appear before the board and on their application and by order of board, the hearing of their protest on increase of assessment was continued to Monday, May 15, 1916.

"All other items as shown on the meeting of board on April 3, 1916, and not shown on minutes of this meeting, were ordered left as raised by board April 3rd. The boar dadjourned to meet Monday, May the 15th, 1916."

The following also appears on the record of the board under date May 15, 1916:

"Eugene Pearson, an attorney, appears for Jeff D. McCune and for Guy McCune; and for Jeff D. and Guy McCune jointly, and filed motions for each of the above parties.

"Motion was made and carried that the motions as filed by Eugene Pearson for Jeff D. McCune, and for Guy McCune and Jeff D. and Guy McCune, jointly, be not made a matter of record.

"Evidence on the assessment of Jeff D. McCune was heard.

"Evidence on the assessment of Guy McCune was heard.

"Evidence on the assessment of Jeff D. and Guy McCune was heard.

"Motion made and carries that the assessment of Jeff D. and Guy McCune be $15,000 in money, notes and bonds (Classes 5-6-7-8 and 9) as raised April 3rd, 1916.

"Motion made and carries that the assessment of Jeff D. McCune be $74,500 in money, notes and bonds (Classes 5-6-7-8 anl 9) and $500 all other personal as raised April 3, 1916.

"Motion made and carries that the assessment of Guy McCune be placed at $7,732 in money, notes and bonds (classes 5-6-7-8 and 9) and $150 all other personal property.

"Motion made and carries that the assessment of Guy McCune be trebled as a penalty for giving a fraudulent list making his assessment $23,646, $450 in

class 4 and $23,196 in money, notes and bonds, classes 5-6-7-8 and 9.''

The change of the record of the meeting of April 3, 1916, consisted in the addition thereto of the various classes of property to which said increases were referable. As to these matters Ros Cauthorn testified that he was Clerk of the County Court; that the entries of April 3rd, April 24th and May 15, 1916, were all in his handwriting; that the writing on the margin (of which complaint is made) was added ''after his [Mr. Pearson's] visit on May 12th'' and that he (Cauthorn) ''wrote it there by order of the presiding member of the board of equalization . . . and it was read and approved at the last meeting.''

On cross-examination by Mr. Pearson, witness Cauthorn testified as follows:

''Q. What was the occasion of your making this change? A. I was ordered to do so by the county judge, Judge Bledsoe. . . .

''Q. What did the judges say when they came in your office? A. Well, Judge Carter said he didn't approve that record as it was. Looked it over and said 'I won't approve that record as it is.' . . .

''Q. That was after May 12th when Mr. Pearson was there?. A. Yes, sir.

''Q. And before May 15th? A. Yes, sir. . . .

''Q. Didn't you think it was a little strange he should come in there and order you to make the change in this proceeding? . . . A. No, I don't see why it should if his attention was called to it and he came and looked it over. I don't see why it should be strange at all.

''Q. Does the board examine your record for the purpose of approval? A. Well, not often. Occasionally they look it over, especially if they have anything special in their mind that they are not clear about they come and look it over.

''Q. And order you to change it? A. Yes, sir. I changed county records that way.''

The court found the issues for respondents and ordered and adjudged that relators take nothing by their writ and that the same be quashed, from which finding and judgment relators duly appealed.

I.  Appellants complain that the record discloses that the board of equalization was illegally organized. The record shows beyond controversy that the persons acting as members of the board were those pointed out in the statute; that the board as so organized convened at the times prescribed by the statute and proceeded to discharge the duties imposed on the Board of Equalization of Audrain County, Missouri.  The certification of its records by the Clerk of the County Court recited them to be the proceedings of the Board of Equalization of Audrain County, Missouri.  This proceeding is one by *certiorari* to quash the proceedings of said board of said county and State, in so far as they increase the assessment of taxes against relators jointly and severally.  It is not within the scope of the present proceeding to question the organization *de jure* of the Board of Equalization of Audrain County.  We, therefore, put that contention aside.

Constitution of Board.

II.  It is however contended that the board of equalization failed to notify defendants of its action increasing their assessments, and that such notice was jurisdictional.  The answer to this is that the relators were notified and thereafter appeared at the meeting of the board on April 24th and upon their application the matters were continued until the meeting to be held on May 15th.  This general appearance of relators vested the board with jurisdiction, even if there was any defect in the prior notice to them. [State ex rel. v. Baker, 170 Mo. l. c. 390 et cases cited.]  At the subsequent meeting of May 15th, relators again appeared, and this time specially, and filed objections in writing to the orders of the board increasing their assessments.  This appearance at the

Notice.

adjourned meeting of the board though in limited terms, could not in any way detract from the jurisdiction which the board acquired by virtue of the previous general appearance on April 24th. We hold, therefore, that there was no lack of jurisdiction on the part of the board to deal with the question of increasing the assessment of the property of relators, as shown by the face of its record.

III. One of the points made in the written objection filed by relators at the board meeting of May 15th, 1916, was that the records of the board had been altered or changed so as to specify the respective property on account of which the increased assess-

**Amending Record.** ments were made. The record abundantly shows that these amendments of the records of the board were made prior to its final adjournment by the direction of its presiding officer. The amendments did not change the amount of increase, but simply specified the class of property to which it was applicable. It was clearly within the right of this body to make its records speak the truth, when, in so doing, no legal injury was inflicted. These amendments could not have prejudiced relators if they owned the property specified, which does not seem to be denied. [State ex rel. v. Buchanan Co. Board Equal., 103 Mo. 235; Henry Co. v. Salmon, 201 Mo. 1. c. 151.] We hold, therefore, that they did not oust the jurisdiction of the Board. [State ex rel. v. Trust Co., 261 Mo. 1. c. 455; R. S. 1909, sec. 11407; State ex rel. v. Timbrook, 240 Mo. 236.]

IV. It is also claimed on behalf of one of the relators that the board acted without jurisdiction in trebling his assessment. This contention cannot be sustained under the facts shown in this record.

**Trebling Assessment.** The action of the board in trebling the assessment in question was based upon a finding that the relator had given a false list. [R. S. 1909, sec. 11354; State ex rel. v. Baker, 170 Mo. 1. c. 392; In re Sanford, 236 Mo. 686.]

V. It affirmatively appears in the records of the board that it heard evidence as the basis of the increased assessments of relator's property. Under the statute it had the right to increase the assessments of the property returned, or to assess that omitted, or to do both, if it had knowledge of facts justifying such action. [R. S. 1909, sec. 11407.] In the matters complained of it did not act of its own knowledge, but took proof. It was charged with the duty of assessing and equalizing the valuation of all the property within the county, and seems to have been actuated by that wholesome motive in making the orders complained of. We are unable to perceive from the records before us that the board has transcended its statutory power or has violated the law in the matter of assessing the property of relators. In reviewing its action we cannot go beyond the face of the record under the decisions of this State.

It necessarily follows that the writ of *certiorari* was properly quashed by the trial court and that its judgment must be affirmed.

It is so ordered. *Blair, P. J.,* and *Graves, J.,* concur.