THE STATE EX REL. L. D. THOMPSON, State Auditor, ET AL. v. C. A. DIRCKX, County Clerk of Cole County.—11 S. W. (2d) 38.

Court en Banc, November 24, 1928.

*Stratton Shartel*, Attorney-General, and *Smith B. Atwood*, Assistant Attorney-General, for relators.

*Nike Sevier* and *Montgomery, Rucker & Hayes* for respondent.

RAGLAND, J.—Mandamus. This is an original proceeding wherein the State Auditor and the State Board of Equalization seek to compel the County Clerk of Cole County "to extend . . . (on the) assessor's books of Cole County the aggregate valuation of the banking corporations of said county as equalized and assessed by the said State Board of Equalization, and to compute and extend the taxes to be levied against said banking corporations . . . upon valuations which, in the aggregate, shall not be less than the aggregate valuation fixed and determined by said State Board of

Equalization as aforesaid, and to vacate and annul any and all extensions and computations which have been made by respondent county clerk upon a lower valuation.''

The facts out of which the controversy arises are not in dispute. On the first day of June, 1927, the Assessor of Cole County assessed the personal property of each individual bank and trust company in the county by assessing their respective shares of stock. The aggregate of these assessments was $554,336. It is conceded that the assessor assessed the personal property of these banking corporations at what he deemed to be its full cash value, while he assessed all other property in the county, both real and personal, at only seventy per cent of what he considered to be its real value in money. Each of these banks and trust companies appealed from the valuation placed on its personal property by the assessor, on the ground that the assessment was unjust and discriminatory. The County Board of Equalization, when it convened on April 4, 1928, after hearing evidence found that such assessments were in fact unjust and discriminatory in that they were not made on the same basis as the valuations and assessments of other taxable property in Cole County. It thereupon made a blanket order as follows:

''The valuations and assessments of all Cole County Banks and Trust Companies being those listed above are ordered changed to equal seventy per cent of the valuations and assessments made and filed by the County Assessor. The proper officers are hereby ordered to adjust their books accordingly; and collections will be made by the county and city collectors in accordance therewith.''

Prior to the making of the order just set forth, the State Board of Equalization, on March 28, 1928, in equalizing the values of the various classes of property among the respective counties of the State raised the aggregate valuation of the personal property of banks and trust companies of Cole County from $554,336 to $630.836 and duly transmitted its order with reference thereto to respondent as County Clerk. Subsequently, on May 16, 1928, the State Board amended its order, thereby fixing the aggregate valuation of the personal property of the banks and trust companies of Cole County at $554,336, being the aggregate of such assessments as originally made by the assessor. This amended order it likewise transmitted to the respondent.

Respondent refuses to correct or adjust the assessor's books of Cole County so that they will conform to the order of the State Board of Equalization, giving as his reason therefor that he cannot do so without doing violence to and disobeying the order and judgment of the County Board of Equalization, which he believes and alleges to be a valid and legal order and judgment.

From the foregoing it is manifest that either the State Board of Equalization or the County Board has exceeded its statutory juris-

diction, or else the statutes themselves engender an irreconcilable conflict. In order to determine where the fault lies it will be necessary to make a brief examination of the statutory scheme of assessing property for the purpose of levying *ad valorem* taxes.

Section 12802 (R. S. 1919) requires that "the assessor shall value and assess all the property on the assessor's books according to its true value in money at the time of the assessment."

By Section 12810 it is provided: that "the assessor . . . shall make out and return to the county court, on or before the 20th day of January in every year, a fair copy of the assessor's book, verified by his affidavit annexed thereto. . . . And the clerk of the county court shall immediately make out an abstract of the assessment book, showing aggregate footings of the different columns, so as to set forth the aggregate amounts of the different kinds of real and personal property and the valuation thereof, and forward the same to the state auditor, to be laid before the state board of equalization . . . on or before the 20th day of February . . ."

The State Board of Equalization meets at the Capitol in the city of Jefferson on the last Wednesday in February of every year. [Sec. 12854.] Its powers and duties are prescribed by Sections 12855 and 12857 as follows:

Section 12855: "The State Auditor shall lay before the board of equalization the abstracts of all the taxable property in the State . . . returned to him by the respective county clerks, . . . and the board shall classify all real estate situate in cities, towns and villages as town lots and all other real estate as farming lands, and shall classify all personal property as follows: First, banking corporations: second, railroad corporations; third, street railway corporations; fourth, all other corporations; fifth, bonds, notes and evidences of indebtedness; sixth, horses, mares and geldings; seventh, mules; eighth, asses and jennets; ninth, meat cattle; tenth, sheep; eleventh, swine; twelfth, farm implements and all other personal property. And the board shall proceed to equalize the valuation of each class thereof among the respective counties of the State in the following manner:

"First—It shall add to the valuation of each class of the property, real or personal, of each county which it believes to be valued below its real value in money such per centum as will increase the same in each case to its true value.

"Second—It shall deduct from the valuation of each class of the property, real or personal, of each county which it believes to be valued above its real value in money such per centum as will reduce the same in each case to its true value."

Section 12857: "When the state board of equalization shall have completed its labors, the state auditor shall immediately transmit to

each county clerk the per centum added to or deducted from the valuation of the property of his county, specifying the percentage added to or deducted from the real property and the personal property respectively, and also the value of the real and personal property of his county as equalized by said board; and the said clerk shall furnish one copy thereof to the assessor, and one copy to be laid before the annual county board of equalization. . . ."

The county board of equalization meets on the first Monday in April each year. (Sec. 12820.) It has the "power to hear complaints and to equalize the valuation and assessments upon all real and personal property within the county which is made taxable by law," but it may not "reduce the valuation of real or personal property of the county below the value thereof as fixed by the said state board of equalization." (Sec. 12821.) The method of its procedure is prescribed as follows:

"First, they shall raise the valuation of all such tracts or parcels of land and any personal property, such as in their opinion have been returned below their real value, according to the rule prescribed by this chapter for such valuation; . . . second, they shall reduce the valuation of such tract or parcels of land or any personal property which, in their opinion, has been returned above its true value as compared with the average valuation of all the real and personal property of the county." [Sec. 12822.]

The county clerk is commanded to "adjust the tax book according to the orders of said board (the County Board of Equalization) and the orders of the State Board of Equalization." (Sec. 12833.)

We have quoted liberally from the statutes in order that the statutory plan of assessment may be visualized and its essential simplicity made plain.

The Cole County Board of Equalization after hearing evidence concluded that the personal property of all the banks and trust companies in the county, classified by the State Board of Equalization under Section 12855 as "banking corporations," had been assessed at its actual value, while all other property in the county had been assessed at but seventy per cent of its real value; thereupon it reduced the valuation of the property of banking corporations thirty per cent so as to equalize it with that of other classes of property in the county. The power to do this is apparently conferred by Sections 12821 and 12822. If those sections stood alone it is plain that they would have to be so construed. But they do not stand alone, and consequently they must be construed in connection with the other sections which relate to the same subject-matter, particularly Section 12855. The latter section requires the State Board of Equalization to classify all personal property in the State under twelve different heads and then "to equalize the valuation of each class thereof among the respective counties of the State." In doing

so they are bound to add to, or deduct from, the valuation *of each class* of property *of each county* such per centum as will bring it to its true value in money. And when the State Board in the discharge of this statutory function has determined and fixed the valuation of a class of property, the county board can neither increase nor reduce it. The principles determining this construction are so fully set forth in Mercantile Trust Co. v. Schramm, 269 Mo. 489, 190 S. W. 886, that a further elaboration of them is unnecessary. What the Cole County Board of Equalization did was to reduce the aggregate valuation of the class of property designated as "banking corporations" thirty per cent in order to equalize it with the valuations of other classes of property in Cole County; this it had no power to do. Because it is perfectly obvious that the county board could not equalize valuations as between classes of property without changing the aggregate valuations thereof as fixed by the State Board. The county board's authority is limited to equalizing valuations of property *within a class.* If it finds one piece of property within a class overvalued, it follows as a necessary implication that the remaining property in the class, or at least some of it, is undervalued. This for the reason that the valuation of the whole, as a class, is fixed by the State Board and that cannot be changed. A reduction of the valuation of one or more pieces of property, therefore, requires a corresponding increase of the valuation of some or all of the remaining property in the class.

There is no justification for assessing bank stock on the one hand at full value and all other property on the other at less than its real value. The assessor is commanded to value and assess *all property according to its true value in money;* and the State Board of Equalization to determine as to each class of property its *true value in money.* If these plain mandatory provisions are violated through discrimination as between the different classes of property, the power of correction does not lie with the County Board of Equalization. The taxpayer who suffers from such discrimination must find relief in a court of equity. [Boonville Natl. Bank v. Schlotzhauer, 298 S. W. 732.]

As the order of the Cole County Board of Equalization is void it is the duty of respondent to so adjust the tax books that they will conform to the order of the State Board. And the performance of that duty may be compelled through the institution of a proceeding of this kind by the State Board. [State ex rel. v. Bethards, 320 Mo. 1164, 9 S. W. (2d) 603.]

Peremptory writ awarded. All concur, except *Gentry, J.,* not sitting.