FIRST TRUST COMPANY OF ST. JOSEPH v. JIM WELLS, Collector of
Revenue of Buchanan County, Appellant.—23 S. W. (2d) 108.

Division One, December 30, 1929.

*Stratton Shartel*, Attorney-General, and *Wi'liam Reiter* and *L. Cunningham* for appellant.

*Culver, Phillips & Voorhees* for respondent.

RAGLAND, J.—This is an action to enjoin the Collector of the Revenue of Buchanan County from collecting a state and county tax alleged to be void. Defendant demurred to plaintiff's petition and his demurrer was overruled. As he declined to further plead, judgment went in favor of plaintiff granting the relief prayed in the petition. The defendant appealed to this court.

"The salient facts, alleged in the amended petition and admitted by the demurrer, are these:

"The plaintiff is a corporation organized under the laws of this State relating to trust companies. As of June 1, 1926, the plaintiff returned and the Assessor of Buchanan County assessed all the property and capital stock of plaintiff for state, county and school purposes, payable December 31, 1927, at $178,020. On that valuation, the total tax owing by plaintiff was $3817.45, and that amount was extended upon the tax books. The County Board of Equalization convened as required by law and adjourned finally prior to April 1, 1927, without disturbing the assessment. At the time the county assessor assessed the plaintiff's property and capital stock, he also assessed the property and shares of stock of all other banks and trust companies in said county, some twenty or more in number; the aggregate assessed valuation, including the property and capital stock of the plaintiff, being $395,168.

"On April 1, 1927, the State Board of Equalization met and, for the purpose of equalizing the assessed value of the aggregate property of all state banks and trust companies in Buchanan County with the assessed value of the same class of property in other counties in the State, without any notice to the plaintiff, made an order raising the aggregate value of the property and capital stock of all state banks and trust companies in Buchanan County, as returned by the assessor, 14.23%. The County Board of Equalization for Buchanan County having finally adjourned prior to the time the order of the State Board of Equalization was made, its order was directed and sent to the County Clerk of Buchanan County, Missouri, who, without any authority other than said order and without any notice to the plaintiff and claiming to be authorized so to do by Section 12826, Revised Statutes 1919, arbitrarily added to the assessed value of the property and capital stock of each of the banks and trust companies in said county 14.23% of the valuation returned by the assessor; and so, the county clerk added to the assessed value of the property and capital stock of the plaintiff $25,330 on the tax books of the county, as extended; and there was added to the amount

of the tax which the plaintiff would be required to pay $544.39 as the result of said increased assessment, making plaintiff's total tax as it appeared upon said tax books $4,372.04. This was done, though (it is admitted) the plaintiff had returned and the county assessor had, in the first instance, assessed the value of all the property owned by the plaintiff, or in which it had an interest, and its capital stock at 100% of its actual value in money. The defendant, as collector of the county, demanded of plaintiff the sum of $4,372.04 and threatened to collect that amount with penalties at the rate of two per cent per month, if payment was not made. The taxes became delinquent on January 1, 1928. The plaintiff declined to pay the amount of tax demanded by the collector, but tendered to him $3,817.45, which was the full amount of taxes due, if, as the plaintiff contends, the increase in the assessment made by the county clerk, pursuant to the order of the State Board of Equalization, was void. The defendant refused to accept the tender. On the last day before the tax became delinquent, to-wit, December 31, 1927, plaintiff filed this suit and tendered into court $3,817.45. From these facts, it appears that the question presented in this case is, whether or not the increase in the amount of plaintiff's assessment, made by the county clerk, with the resulting increase of $544.39 in plaintiff's tax, was authorized and is valid. The pivotal question is, whether Section 12826, Revised Statutes 1919, under which the county clerk assumed to act in raising the assessment, is violative of Section I of Article XIV of the Amendments to the Constitution of the United States or of Section 30 of Article II of the Constitution of Missouri, and whether the act of the county clerk in raising the assessment of the plaintiff's property and capital stock without notice to it, or giving it an opportunity to be heard, deprived plaintiff of its property without due process of law.

"Respondent does not question the legality of the order of the State Board of Equalization raising the aggregate assessment of all of the banks and trust companies in Buchanan County for the purpose of equalizing it with the assessment of the same class of property in all of the other counties of the State. Respondent's insistence is that Section 12826, Revised Statutes 1919, under which the county clerk assumed to act in raising the respondent's assessment, is violative of Section I of Article XIV of the Amendments to the Constitution of the United States and Section 30 of Article II of the Constitution of Missouri in that it fails to provide for any notice or opportunity to the taxpayer to be heard with respect to. how much, if any, of the aggregate raise ordered by the State Board of Equalization should be apportioned or added by the county clerk to the assessment of each individual taxpayer; and whether the act

of the county clerk in raising the plaintiff's assessment without in fact giving the plaintiff any notice or opportunity to be heard, deprived it of its property without due process of law.'' [Quoted from Respondent's statement and brief.]

After the county assessor's book is completed, the statute, for the purpose of the equalization of the assessments, classifies personal property under twelve heads, the first of which is that of banking corporations. [Sec. 12855, R. S. 1919.] With respect to the equalization of assessments, the functions of the county board of equalization and the state board of equalization are entirely separate and distinct. The county board's authority is limited to equalizing valuations of property *within a class,* and in doing so it can neither raise nor lower the aggregate valuation of a class as a whole. [State ex rel. v. Dirckx, 11 S. W. (2d) 38.] The state board's authority is limited to the equalization of the valuation of each class as a whole among the respective counties of the State. In so doing it equalizes the valuations of the several classes with respect to each other, because the ''real value in money'' is the standard applied to all. It has no power to raise or lower the valuations of specific properties within a class. [State ex rel. v. Vaile, 122 Mo. 33, 26 S. W. 672.] It is wholly immaterial which board completes the discharge of its duties first, because, as stated, they are wholly independent of each other. The county clerk is required to ''adjust the tax books according to the orders of said board (the county board of equalization) and the orders of the state board of equalization.'' [Sec. 12823, R. S. 1919.] ''In case the report from the state board of equalization be not received at or during the session of said county board, then it shall be the duty of the county clerk to adjust the tax books according to such report when received.'' [Sec. 12826, R. S. 1919.] The clerk's duties as prescribed by the two sections, 12823 and 12826, are wholly ministerial. [State ex rel. v. Bethards, 9 S. W. (2d) 603.] Section 12857 provides:

''When the state board of equalization shall have completed its labors, the state auditor shall immediately transmit to each county clerk the per centum added to or deducted from the valuation of the property of his county, specifying the percentage added to or deducted from the real property and personal property respectively, and also the value of the real and personal property of his county as equalized by said board; and the said clerk shall furnish one copy thereof to the assessor, and one copy to be laid before the annual county board of equalization. . . .''

The manifest purpose of having the report of the state board laid before the county board, if still in session, is to inform the latter of the aggregate class valuations fixed by the former, so that it will not transgress the statutory admonition that it not reduce any of

the aggregate class valuations as determined by the state board. [Sec. 12821, R. S. 1919.] If the county board completes its labors before the state board acts, there is no purpose to be served in laying before the former a report of the latter's action.

With respect to the assessment of 1926 in Buchanan County, on which the tax in question was based, the county board of equalization completed its work before the state board acted. It had therefore passed on and equalized the valuation of respondent's property with the valuations of like properties of the other banking corporations in the county. It is obvious that the horizontal raise of 14.23 per cent in the valuation of all such properties in the county, ordered by the state board, in no wise affected the equalization of the individual assessments as theretofore determined by the county board. There was therefore nothing further for the latter board to do—nothing that it could do—after the county clerk received the report of the state board's proceedings. Respondent does not contend that any of its constitutional rights were violated by the action of either the county or the state board: it complains only of the action of the county clerk. But it is manifest that the clerk was vested with no discretion whatever; his duty under the statute to make the additions and extensions on the tax book in conformity with the state board's order was mandatory; he was, so to speak, merely the amanuensis of the state board. [See Columbia Terminals Co. v. Koeln, 3 S. W. (2d) 1021; Trust Co. v. Schramm, 269 Mo. 489, 190 S. W. 886.]

It is said that it stands admitted (by the demurrer) that respondent's property, after the raise made by the state board of equalization, was assessed at 114.23 per cent of its true value; the admission goes no further than that in the opinion of the assessor and the county board it was originally assessed at its full value. [State ex rel. v. Bethards, supra.] But, if the admission be regarded as going to value in an absolute rather than a relative sense (if there is any such thing), then it must be presumed that through the action of the county boards and the state board all property in the State was assessed at 114.23 per cent of its value: and, if so, the provisions of the Constitution relating to equality, uniformity and proportionality in taxation were in no wise impinged.

Our statutory scheme of assessing property for the purpose of levying ad valorem taxes affords the taxpayer at every stage of the proceeding an opportunity to be heard with respect to the correct-

314

ness of the assessment of his property. Indeed, the right to such hearing is not foreclosed until the tax books are actually delivered to the officers intrusted with the duty of collecting the taxes. Even though the action of the State Board of Equalization completes the assessment, its decisions may be opened up for rehearing, upon a proper showing, through the mediation of the State Tax Commission. [Brinkerhoff-Faris Savings & Trust Co. v. Hill, 19 S. W. (2d) 746, 751.]

Assuming that respondent had a grievance, it does not appear that it attempted to make use of any of the statutory remedies in order to obtain relief: its pleading therefore does not in that respect show it entitled to equitable relief. [Brinkerhoff-Faris Savings & Trust Co. v. Hill, supra.]

The judgment of the circuit court is reversed and the cause remanded with directions to that court to dismiss plaintiff's bill. All concur.