STATE OF MISSOURI at the Relation of the City of St. Louis, a Municipal Corporation, Relator, v. HENRY S. CAULFIELD, STRATTON SHARTEL, L. D. THOMPSON, CHARLES U. BECKER and LARRY BRUNK, Constituting the Board of Equalization of the State; JOHN T. WADDILL, Chairman of the State Tax Commission, FORREST SMITH and JESSE A. MITCHELL, Members of the State Tax Commission, and WILLIAM M. CHAPMAN, Secretary of the State Board of Equalization and Secretary of the State Tax Commission.—62 S. W. (2d) 818.

Court en Banc, July 24, 1933.

*Julius T. Muench* and *Charles J. Dolan* for relator.

*Roy McKittrick,* Attorney-General, and *Gilbert Lamb,* Assistant Attorney-General, for respondent.

*Charles G. Revelle* and *Courtney S. Goodman, amici curiae.*

272

HAYS, J.—The relator, the city of St. Louis, sued out of this court a writ of certiorari directed to the respondents, the State Board of Equalization and the State Tax Commission, for the pur-

pose of reviewing the record of said board in the matter of the assessment of the property known as the Continental Life Building in said city and owned by the Grand National Bank and the Continental Life Insurance Company. The respondents waived the issuance of our writ and made return to relator's petition in lieu of the writ, and issue was joined upon said return and relator's motion for judgment on the pleadings.

The return brings up the record as made by said board and the same is accompanied by various exhibits referred to therein. Among these exhibits are (1) the complaint of said property owners filed with respondent commission; (2) the order of said commission for a hearing on the complaint; (3) the report, finding and assessment made by the agent of the Tax Commission, and the order of said commission approving said findings and assessment of said agent; (4) certain papers filed with said Board of Equalization by said property owners as complainants; and (5) report of the commission to the Board of Equalization of the former's proceedings and orders, together with a transcript of the evidence heard by said commission.

Notwithstanding the return made of said evidence, the same is not a part of the record, and is therefore not for our consideration and will be disregarded since the writ of certiorari serves to bring up only the record proper of the Board of Equalization. [State ex rel. McCune v. Carter, 279 Mo. 304, 214 S. W. 180; State ex rel. Heimburger v. Wells, 210 Mo. 601, 109 S. W. 758; Ward v. Board of Equalization, 135 Mo. 309, 36 S. W. 648; State ex rel. Harrah v. Cauthorn, 40 Mo. App. l. c. 96.]

The facts leading up to the proceeding had before the Tax Commission, as well as the facts contained in the record of the Board of Equalization are stated in the briefs filed by *amici curiae,* who as attorneys represented the property owners throughout the proceedings prior to the issuance of the writ herein. With slight change such statement is as follows:

"At all the times involved in this record the property whose assessment is in issue was jointly owned by the Continental Life Insurance Company, St. Louis, Missouri, and Grand National Bank, St. Louis, Missouri. The property involved is an office building located on Olive Street, near Grand Avenue, and is used for general office purposes. The building, exclusive of the land on which same is located, was assessed by the Assessor at $2,067,500, and the parcel of land was assessed by the Assessor at $132,500. The assessment so made by the Assessor on the parcel of land was deemed reasonable and just by the property owners, but the assessment placed on the building was deemed excessive and out of all proportion and equality with assessment placed on property of similar or same use, value and character in the City of St. Louis.

"The property owners took their appeal to the City Board of Equalization, which sustained the assessment made by the Assessor. Thereupon the property owners duly filed their joint complaint and appeal with the State Tax Commission. A hearing on such complaint and appeal was thereupon conducted, and in August thereafter the State Tax Commission found the assessment placed on the property by the Assessor and the City Board of Equalization to be excessive and assessed both the real estate and the building located thereon at $1,807,175, which represented an assessment of $1.674,675, on the building, or a reduction of $392,825 in the assessment made by the Assessor and the City Board of Equalization.

"Thereafter the State Tax Commission submitted to the State Board of Equalization its report of this assessment and asked for the approval thereof by the State Board of Equalization. The State Board of Equalization thereafter conducted a hearing on the objections and exceptions of the property owners to the valuation certified by the Tax Commission, and after such hearing found that this building was of the same class, character, value, use and kind of other buildings in St. Louis which were assessed on the average basis of $6.28 per square foot; that this building should be assessed and valued on the same basis; 'and that the assessed valuation of said building as of June 1, 1931, should be and is declared to be $691,145.40.' "

And upon such finding and in connection therewith the board entered its final orders, which we quote *verbatim*, as follows:

"Now, therefore, it is ordered that the report of the State Tax Commission, fixing the valuation and assessment of said property at $1,807,175, be and the same is expressly disapproved, and the Board does further order and direct that said assessment and valuation of $691,145.40 be duly certified, according to law, to the Assessor of the City of St. Louis, Missouri, as the assessment and valuation on said building as of June 1, 1931.''

The record as outlined above presents the question of whether the purported assessment attempted to be made by the State Board of Equalization is a valid assessment, and the question of validity is dependent upon whether the board possessed jurisdiction in that behalf.

Much is contained in the brief of *amici curiae* and much presented in their argument relative to the constitutional and legislative requirements looking to uniformity and equality in the assessment and taxation of all property in the State. It cannot be gainsaid that such requirements were designed to attain that end. But experience has demonstrated that no more than approximation is attainable in the process of valuation and assessment provided for. However, the *desideratum* just referred to should ever be pursued, although the pursuit must of necessity be confined to the route laid

out and defined by the law. So the practical question confronting us is whether or not the end reached by the Board of Equalization in the proceeding before it, as shown by its record, was reached in a mode authorized by law. It is plain to be seen that the board in the proceeding under review assumed the power and undertook to make an original valuation and assessment of the Continental Life Building and the parcel of land upon which the building stands. Unless the board possessed that power its said action is void for lack of jurisdiction, or because in excess thereof.

■ This board is an agency created by the Constitution of the State, Section 18 of Article 10, which declares—"The duty of said board shall be to adjust and equalize the valuation of real and personal property among the several counties in the State, and it shall perform such other duties as are or may be prescribed by law." The duties enjoined on the board are set out in Article 5 of the chapter on taxation and revenue, at page 2705 of the Revised Statutes of 1929, which requires that the board meet at the capitol on the last Wednesday in February of each year and after taking oath according to law (Sec. 9862), proceed to equalize the valuation of each class of real and personal property among the counties of the State (the city of St. Louis being regarded as a county) by adding to or deducting from each class such per centum as will increase or decrease the same to its real value in money (Sec. 9863); and upon the completion of the board's labors the State Auditor shall transmit to each county clerk the per centum added to or deducted from the real and personal property and also value the real and personal property as equalized by said board and the same shall be laid before the assessor and the county board of equalization (Sec. 9865). In neither said constitutional provision nor in said Article 5 is any power conferred upon said board with respect to real or personal property other than the power to equalize the valuations of the same, in their statutory classifications, among the counties, nor any power of original assessment of such property.

In the case of First Trust Company of St. Joseph v. Wells, 324 Mo. 306, 23 S. W. (2d) 108, in discussing the respective powers of the State and County Board of Equalization, this court, speaking through RAGLAND, J., at page 312, said:

"The functions of the county board of equalization and said State Board of Equalization are entirely separate and distinct. The county board's authority is limited to equalizing valuations of property *within a class*, and in doing so it can neither raise nor lower the aggregate valuation of a class as a whole. [State ex rel. v. Dirckx, 11 S. W. (2d) 38.] The state board's authority is limited to the equalization of the valuation of each class as a whole among the respective counties of the State. In doing so it equalizes the valuation of the several classes with respect to each other, because the 'real value in

money' is the standard applied to all. It has no power to raise or lower the valuations of specific properties within a class. [State ex rel. v. Vaile, 122 Mo. 33, 26 S. W. 672.]''

Regarding the county board's powers, it is provided by statute that such board has no power to reduce the valuation of real or personal property of the county because the valuation thereof is fixed by said state board. [R. S. 1929, sec. 9812.] Our court has held that the county board has no power to reassess (State ex rel. v. Bethards, 320 Mo. 1164, 9 S. W. (2d) 603), and no power to make an initial assessment except upon omitted property. [State ex rel. Davis v. Walden, 332 Mo. 680, 60 S. W. (2d) 24.]

It therefore seems clear that under the constitutional provision and the statutes mentioned the State Board of Equalization has no greater power of original assessment of real and personal property than is possessed by the county board. ■ There is also an apparent legislative purpose that the judgment of equalization made by the state board for the purpose of uniformity of valuation as among the counties and transmitted to the counties for the guidance of the county boards, which completes the regular process of valuations throughout the State and establishes uniformity, shall not be interfered with by any other agency. The process having by that judgment become exhausted, the state board's jurisdiction is also exhausted, except for the board's revision to meet the requirements of the action of the Tax Commission in making thereafter those original assessments and such reassessments as the law empowers it to make, all subject to the approval of said State Board of Equalization. And, necessarily, this reserved jurisdiction is no broader than said board's original jurisdiction as conferred by the Constitution, namely, the power of equalization among the counties—unless perchance the statutes next to be mentioned confer additional powers.

■ It is, however, the contention of the property owners that the power of original assessment attempted by the state board in the present instance was conferred upon said board by what is known as the Tax Commission Law enacted in 1917 (Laws 1917, pp. 542-552), now Article 4 of the Taxation and Revenue Chapter and found in the Revised Statutes, Volume II on pages 2694 to 2705, inclusive, of which the provisions material here are the following:

Subdivision (8) of Section 9854 empowers the commission ''to raise or lower the assessed valuation of any real or personal property, including the power to raise or lower the assessed valuation of the real or personal property of any individual. . . .

Section 9855 prescribes in detail the procedure to be followed in the commission's review and reassessment provided by the preceding section and expressly states that—''The action of the commission,

or member or agent thereof, when done as provided in this section, shall be final, *when approved by the State Board of Equalization."* (Italics ours.)

In the beginning of said Section 9854 there appears as a foreword to the commitment to the commission of the powers and duties set forth in the various subdivisions, and as a limitation thereon, a provision that such powers and authority conferred are "subject to the right of the State Board of Equalization, finally to adjust and equalize the values of real and personal property among the several counties of the State."

To uphold the original assessment made by the state board the property owners contend that such assessment was authorized by the clause in said Section 9855, viz., *"when approved by the State Board of Equalization."*

It is contended that in the enactment of the Tax Commission Law it was the intention of the Legislature to provide a convenient and adequate remedy, and that if the act be construed as limiting the power of the State Board of Equalization thereunder to approval or disapproval of the commission's reassessment, such construction would defeat the purpose of the legislative act by rendering the intended remedy of no avail, and would leave the property unassessed or leave the assessment suspended before the Tax Commission.

We do not accept the results thus laid down nor are we convinced by the argument made in their support. The assessment as equalized by the county board will constitute a legal assessment for the extension of taxes unless and until legally overthrown. [State ex rel. v. Vaile, supra.]

It may be conceded, as argued, that in the enactment of this law the Legislature intended to provide a convenient remedy for a taxpayer whose individual property has been unlawfully assessed and that the legislative intent is of prime consideration in interpreting the statute, which is without ambiguity. But it is an equally well-settled rule of construction that in interpreting statutes the words, if not technical, will be construed in their ordinary sense and with the meaning commonly attributed to them, unless such construction will defeat the manifest intent of the Legislature. [State v. Gordon, 266 Mo. 394, 181 S. W. 1016; 25 R. C. L. 990.] If when the statute has been so considered its meaning is plain and clear, the courts must place upon the statute the interpretation its phraseology dictates, for to give the law any other interpretation, for whatsoever reasons indulged, would constitute judicial legislation. The application of these rules will be deferred for the consideration of other matters.

In respect of the extent of the remedy provided for by the Tax Commission statutes, it is urged that in the first decision rendered in Brinkerhoff-Farris Trust Company v. Hill, 323 Mo. 180, 19 S. W. (2d) 746, this court en banc ruled that it is necessary for a

wrongfully assessed property owner to exhaust this statutory remedy of appeal to the Tax Commission before seeking relief in a court of equity. That is true. However, nothing was said there or in any other of our decisions from which it might be inferred that we regarded an original assessment made by the State Board of Equalization upon real estate of an individual owner was any part of the statutory remedy or was otherwise permissible. In that case at pages 192-193, speaking through RAGLAND, J., we said this:

"It is no doubt true that the State Tax Commission was not intended to supplant local assessing officers and boards, but very clearly it is given full and adequate power, not only to supervise, but to review their work, and where it finds assessments which were not made conformably to law to revise them—and this by inserting where necessary, after a hearing, its own valuations in lieu of those made by the local authorities. It is also true that its revision of the assessments as made by the county assessor and boards, *insofar as it affects the equalization of the values of property among the respective counties of the State,* whether such revision be made before or after the state board has acted, *is subject to the approval of that board.* And in this connection it should be said that, *even though the action of the State Board of Equalization in the first instance completes the assessment judgment that fact does not preclude a revision of such judgment by the Tax Commission, subject to the board's final approval.*"

And we said at page 193:

"The assessment of property for taxation, though carried on simultaneously by county officers and boards, is for the purpose in part of affording basis for the levy of a state tax: to that extent it is a state assessment. As such it is subject to the jurisdiction of the State Board of Equalization, a state agency created by the Constitution itself. The very fact that the Constitution sets up such a tribunal as the State Board of Equalization demonstrates that it was not the intent of the framers of that instrument that the assessment of property for taxation should be beyond the pale of *state supervision and control.*" (Italics the present writer's.)

Our attention is called to the following expression made *arguendo* in that case on page 194: "The remedy provided by the statute is adequate, certain and complete." This seems to have impressed the *amici curiae* as an intimation that the statutes empower the State Board of Equalization to conduct proceedings such as the one now under consideration. We meant no such thing, and we think the expression quoted cannot rightly be so construed. The endeavor there was to make clear the comprehensiveness of the powers, original and revisory, of the Tax Commission relative to the matter of assessments, but throughout the discussion painstaking effort was made to show that all acts of the commission were subject to the supervision

and approval of the board as a constitutional state agency, and to avoid attributing to the latter any powers other than the original powers conferred upon it by the Constitution and the supervisory powers conferred by the Tax Commission statutes.

Following the first Brinkerhoff case, supra, it was held by our court in Division One in First Trust Company v. Wells, 324 Mo. 306, 23 S. W. (2d) 108, the opinion being delivered by RAGLAND, J., who wrote the Brinkerhoff case: ''The state board's authority is limited to the equalization of the valuation of each class as a whole among the respective counties of the State. . . . It has no power to raise or lower the valuation of specific properties within a class. [State ex rel. v. Vaile, 122 Mo. 33, 26 S. W. 672.]''

It thus appears that although the Brinkerhoff case delimits the powers of the State Board of Equalization, confining its constitutional powers to the equalization of values among the counties and its statutory powers—considered generally—the instant proceeding is the first case in this court directly calling for the construction of the Tax Commission statutes in respect of the specific authority which they confer upon said board.

The constitutional provision which created said board, and defined its power and duty, also granted the Legislature authority to place additional duties upon the board. But, it is submitted, that if the Legislature had intended to provide for a rehearing and reassessment by the board, is it not strange that it did not do so forthrightly and plainly? The mere supervisory power of approval which the statute grants, and upon which the finality of the commission's reassessment is conditioned, if intended to authorize a review by a rehearing and reassessment by the board—and this without provision for notice or any direction as to procedure—is in striking contrast with the elaborate plan for the proceeding by way of review by the commission for which the Legislature was at the same time undertaking to provide. In view of the foregoing considerations, and in the light of the foreword contained in Section 9854, and of the context of Section 9855 where the clause appears, and of the language of the clause itself—we think, with particular reference to the meaning of the controverted clause, that the effect of the latter section is to confer upon said board nothing more than the supervisory and controlling power (as related to proceedings such as are now at bar) to approve or disapprove the reassessment as made and certified by the commission, and, in case of approval, so to exercise its constitutional power of re-equalization as to the board should seem meet and necessary. The construction we place upon the statute will find support in the illustrations and the judicial decisions following, all of which pertain to the word ''approve.''

Under a constitutional provision the Governor and the General Assembly participate in the enactment of laws. A bill passed by

the House and Senate becomes a law when, and only when, approved and signed by the Governor—unless it be passed over his veto. Also the State Treasurer is by another constitutional provision empowered to select the depositories of state monies, subject to the approval of the Governor. It is clear that each of the matters instanced involves a participation on the part of two authorities or agents, but neither can exercise the whole power of the other.

In reviewing a proceeding heard by the Public Service Commission and transferred thence to the circuit court, the latter must either affirm or set aside the order reviewed. Such limitations upon the scope of review of the actions of inferior agencies or tribunals are not unusual.

Among the decisions involving matters cognate to those instanced above and bearing on the question now under consideration, the power of approval, reference will be made to two, these being typical of a number of others.

In the case of State v. Rhein, Treas., 149 Iowa, 76, a statute was under construction which authorized the county treasurer to select depositories "to be approved by supervisors," and the court held that the supervisors had no power of selection, saying, 1. c. 80: "Had it been the purpose of the Legislature to empower the board to designate the depository, the easy and obvious thing was to say so in plain unambiguous terms. . . . To 'approve' or give 'approval' is in its essential and most obvious meaning to confirm, ratify, sanction or consent to some act or thing done by others."

In Thaw v. Ritchie (D. C.), 5 Mackey, 200, 225, it was said that as used in the Act of 1798, providing that the chancellor should "approve" a decree of the orphans' court for the sale of the lands of a ward, "approve" implies a revisory proceeding, as the term is only appropriate to such an act, and the statute clearly contemplates a previous decree by the orphans' court to receive the approbation of the chancellor.

■ Whether the statutory remedy available to a property owner whose property has been unlawfully assessed is adequate is a question of law as applied to a given state of facts. What we said in the Brinkerhoff case, and what we reiterate here, is that in the usual course the property owner, in case of claimed unlawful assessment, is required to exhaust his legal remedy first before applying to a court of equity for relief and that ordinarily the summary remedy provided by statute should prove adequate in the legal sense of that term. It is conceivable, however, that, as in this case, where the property owners have exhausted their legal remedy in procuring the orders of the Tax Commission, they may meet with disappointment at the end by obtaining what they may regard as inadequate relief. In this connection we are cited to the cases of Boonville v. Schlotzhauer, 317 Mo. 1298, 298 S. W. 732, and Bridge Company v. Blaser,

318 Mo. 373, 300 S. W. 778, which deal with remedy in equity. It may be well to note that in the Brinkerhoff case, supra, at page 188, we expressly approved the doctrines of the Schlotzhauer case therein specified and noted that we had followed them, or referred to them approvingly, in the Bridge Company case, in Columbia Terminal Company v. Koeln, 319 Mo. 445, and in State ex rel. v. Dirckx, 321 Mo. 345, 11 S. W. (2d) 38; and may also be well to state that this opinion is also in harmony with the doctrines of the Schlotzhauer case.

■ The record before us is susceptible of two divergent constructions. In the purported assessment judgment it is stated that "the commission's report fixing the valuation and assessment of said property at $1,807,175 be and the same is expressly disapproved," and the board makes its own valuation and assessment of $691,145.40, and orders the latter to be duly certified according to law to the Assessor of the City of St. Louis as the valuation on said building as of June 1, 1931. If this action of the board was essentially a disapproval of the report made by the Tax Commission in its entirety, and an entire reassessment was made by the board, the whole of the assessment judgment is void, and the taxes for 1932 should be extended on the tax book of the city pursuant to the valuation as equalized by the city board. On the other hand, if the judgment was essentially an approval of the reduction made by the commission, and a further reduction made by the board, then the board exceeded its jurisdiction only to the extent of its own reduction and the reassessment of the commission is in legal effect made final by the board. We choose the latter construction as the more liberal and practical one. It accords to the summary statutory remedy a greater efficacy than the other contruction would and harmonizes with common sense as well.

The record of the Board of Equalization should therefore be and is hereby quashed as to its recital of the board's revaluation and assessment and as to the first syllable of the word "disapproved," to the end that the taxes upon the assessment thus corrected, and validated as corrected, shall be extended in the manner provided by law. All concur.