THE STATE *ex rel.* WYATT, *Collector*, v. VAILE, *Appellant*.

122  33
128  141

### Division One, May 14, 1894.

1. **County Court:** TAXATION: NUNC PRO TUNC ORDER. A *nunc pro tunc* order of the county court entered in correction of one approving the collector's settlement on the return of the delinquent list, so as to show that the court examined and corrected such list, and ordered the clerk to certify and file it as amended will, in an action by the collector on the tax bill, be presumed to have been made on sufficient evidence.

2. ——: ——: ——: PRESUMPTION. A *nunc pro tunc* order offered in evidence in another suit will, in the absence of rebutting evidence, be presumed to have been made on sufficient evidence.

3. **Taxation:** COUNTY BOARD OF EQUALIZATION, MEETING OF: BRANCH CLERK'S OFFICE. The county board of equalization being required to meet at the county clerk's office on the first Monday in April, may meet at the branch county clerk's office established by law in a city where the record of proceedings there had are to be kept.

VOL. 122—3

4. ——: ——: ——: ADJOURNMENT ORDERS. A county board of equalization, in the absence of a statutory provision to the contrary, has the inherent power to adjourn from time to time, and the fact that on its assembling, it declares its intention to meet at another legal meeting place in the county on a designated day, does not prevent it from modifying said order by its day to day adjournments.

5. ——: ——: ——. The tax assessment is not rendered invalid by the fact that the county board of equalization met in the court room instead of in the clerk's office, both being in the same building, and no one being misled.

6. ——: ——: CUSTOM. A custom of a county board of equalization when in session in one place to consider only the assessments of a certain part of the county can not deprive a taxpayer in another part, of his legal right to present his case there for equalization.

7. ——: ——: JUDICIAL ACTS: COLLATERAL ATTACK. A board of eqalization in the performance of its duties acts judicially, and its orders can not be collaterally impeached, except for want of jurisdiction or for fraud.

8. ——: ——: JURISDICTION. A board of equalization being a tribunal of special and limited powers, acts outside of its jurisdiction are void.

9. ——: STATE BOARD OF EQUALIZATION, POWERS OF. The state board of equalization has no authority to adjust the values of different parcels of land or different classes of land situated in the same county. Its power is limited to equalizing the value of property, real and personal, among the different counties of the state.

10. ——: ——. Although the act of the state board in reducing valuations in a county are void, still the assessment as equalized by the county board will constitute a legal assessment for the extension of taxes.

11. Taxes: ASSESSMENT ROLL. The heading of the columns of an assessment roll are a part of the description of the land assessed.

12. ——: ——: ABBREVIATIONS. The abbreviations "Ex." for except, and "A." for acres, and "Cor." for corner, in assessment rolls, being in every day use and well understood, are sufficient.

*Appeal from Jackson Circuit Court.*—HON. R. H. FIELD, Judge.

AFFIRMED.

*J. M. Southern* and *Warner, Dean, Gibson &*
*McLeod* for appellant.

(1) Of the necessity for a legal assessment no
question can be made. Taxes by valuation can not be
apportioned without it. It is the foundation of all
which follows it. Without a valid assessment taxes
levied have no support and are nullities. Cooley on
Taxation [1 Ed.], p. 260; *The State ex rel. v. Cook,*
82 Mo. 185; *State ex rel. v. Schooley,* 84 Mo. 442; *State
ex rel. v. Railroad,* 114 Mo. 1. (2) Real estate is
assessed but once in two years. Such assessment is the
basis of taxation for the next two years succeeding.
The assessment for the land tax for 1888 and 1889—
involved in this suit—should have been made in 1887.
R. S. 1889, sec. 7552. (3) To constitute a valid
assessment on real property, there must be an assess-
ment by the assessor, an equalization by the county
board of equalization, at a meeting at the office of the
county clerk on the first Monday in April, in biennial
even years. R. S. 1889, secs. 7517, 7518, 7519; *The
St. Joseph Lead Co. v. Simms,* 108 Mo. 222. (4) The
trial court in its instructions 5 and 6 declared that
there was no meeting of the board of equalization for
Jackson county at the office of the county clerk at the
courthouse, in the city of Independence, in the year
1888; that the pretended meeting for that year was
illegal and void. (5) The action of the state board of
equalization in reducing the valuation of lands in
Jackson county twenty-five per cent. and town lots in
said county fifty per cent. was illegal and void. The
taxes in controversy for the years 1888 and 1889, being
levied upon such valuation, were invalid. While the
state board of equalization may raise or decrease the
aggregate assessed value of the property of the entire

county, it has nothing to do with adjusting the values of the different pieces of real estate in any county. Constitution, 1875, art. 10, sec. 7513; *The St. Joseph Lead Co. v. Simms*, 108 Mo. 222; *McKee v. Supervisors*, 53 Ill. 447. (6) The constitution contemplates equal and uniform taxation. No more effectual method of inequality in taxation could be devised than that of discrimination by the state board of equalization in assessed values, as in the case at bar, between platted and unplatted real property in a county. Constitution, 1875, art. 10, secs. 3, 4; *State ex rel. v. Schooley*, 84 Mo. 448. (7) The county board of equalization is a judicial body, created and deriving all its powers from the statute. The time and place of its meetings are fixed by statute. The judgment of a circuit court held at a time and place unauthorized by law is void. It follows that the acts of a board of equalization at a time and place unauthorized by law are null and void. R. S. 1889, sec. 3428; *The St. Joseph Lead Co. v. Simms*, 108 Mo. 222; *Henderson v. Hawkins*, 65 Mo. 269; Cooley on Taxation [1 Ed.], p. 265. (8) Assuming that the meeting of the county board of equalization on April 3, 1888, was legal (which we deny), yet the defendant was denied a hearing there for the following reasons: *First.* The undisputed evidence is that at Kansas City equalization of values of real estate were only attempted to be made in range 33, while the taxes in question were all on real estate in range 32. *Second.* The county board of equalization at Kansas City, by an order fixed the date for its meeting at Independence (the county seat) April 16, continuing four days. (9) The *nunc pro tunc* order of the county court entered at the January term, 1890, upon the delinquent tax list of 1888 is null and void. There was nothing before the county court upon which to base such order. There was no entry in the minutes of the

county court, or in any minutes kept by any judge or clerk thereof, nor was there any paper filed upon which said order of the court could be made. *Dunn v. Railey*, 58 Mo. 134; *State v. Jeffers*, 64 Mo. 378; *Priest v. McMasters*, 52 Mo. 60; *Hansbrough v. Fudge*, 80 Mo. 307; Freeman on Judgments [1 Ed.], sec. 68. (10) *Nunc pro tunc* entries can not be made merely to supply past omissions by the court. In all cases in which an entry *nunc pro tunc* is made, the record should show the facts authorizing the entry. The law of this state unquestionably is that you can not, without something of record to amend, have an entry *nunc pro tunc*. *Hansbrough v. Fudge*, 80 Mo. 307, 309; *Bank v. Allen*, 60 Mo. 474; *Gibson v. Chouteau Heirs*, 45 Mo. 171; *Jillett v. Bank*, 56 Mo. 304. (11) The *prima facie* case made by the tax bills for the delinquent taxes for the year 1888 is rebutted by the record evidence showing that there was no delinquent list for that year on which they could rest. There is no independent proof, as was in 113 Mo. 94, of a regular levy and assessment for the taxes for that year on the land of the defendant. *State ex rel. v. Scott*, 96 Mo. 72; *State ex rel. v. Hurt*, 113 Mo. 90. (12) The failure to comply with the statutory provisions is fatal to a recovery by the plaintiff in this case. *State ex rel. v. Schooley*, 84 Mo. 447; *Howard v. Heck*, 88 Mo. 456; *State ex rel. v. Cook*, 82 Mo. 185; *Henry v. Bell*, 75 Mo. 194; *Warrensburg v. Colburn*, 77 Mo. 56.

*J. G. Paxton* for respondent.

(1) The meeting of the county board of equalization at the office of the county clerk in Kansas City on April 3, 1888, was a legal meeting of the board, at the time and place fixed by the statute, at which the defendant could have been heard. (2) At the meeting of

the board at Independence, in the county court room in the building in which was the county clerk's office, on April 21, 1888, defendant appeared, asked that his assessment be reduced, and his request was denied. (3) When the cause is tried by the court and its finding is the only one warranted by the evidence, it is immaterial whether the declarations of law given were correct. *Williamson v. Drew*, 9 Mo. App. 597; *Wilson v. Ins. Co.*, 35 Mo. App. 521; *Cooper v. Ord*, 60 Mo. 431. (4) The action of the state board was authorized under section 7514, Revised Statutes, 1889. *Black v. McGonigle*, 103 Mo. 192. (5) The evidence is that the record of the county court for March, 1889, showed that the delinquent list of 1888 was approved. This is all that the law requires. *State, etc., v. Hurt*, 113 Mo. 90. (6) The settlement of the collector with the county court, and the return of the delinquent list, is not a judgment, and mistakes made therein may be inquired into and corrected. *State ex rel. v. Ewing*, 116 Mo. 129; *Cole Co. v. Dallmeyer*, 101 Mo. 57; *Sears v. Stone Co.*, 105 Mo. 236. (7) In such matters its position is analogous to that of county commissioners who have the right at any regular meeting to amend their records according to facts. 4 Am. and Eng. Encyclopedia of Law, 384; *Dresden v. Commissioners*, 62 Me. 365; *Gloucester v. Commissioners*, 116 Mass. 579. (8) The *nunc pro tunc* entry can not be assailed in a collateral proceeding. *Montgomery Co. v. Auchley*, 103 Mo. 492.

BLACK, P. J.—The collector of Jackson county brought this suit to recover delinquent taxes for the years 1888 and 1889, on eight or nine parcels of land owned by defendant. The cause was tried before the court without a jury, resulting in a judgment for the plaintiff for $2,048.

1.   The plaintiff put in evidence the tax bills and rested.   To defeat the *prima facie* case thus made, the defendant called the deputy county clerk, who produced the delinquent list for 1888, and testified that the collector returned it to the county court on the nineteenth day of March, 1889.   With the records of the county court before him and without objection, he testified that they showed an order of the court approving the collector's settlement, made when the delinquent list was returned, but that the records showed no order correcting the list or directing the clerk to certify and file the list in his office.   On the twentieth day of January, 1890, the county court made a *nunc pro tunc* order correcting the one made in March, 1889, so as to show that the court examined the delinquent list, corrected the same and ordered the clerk to certify the corrected list and file the same in his office.   The clerk made the certificate in due form, and then filed the list thus certified in his office.   This certificate bears date the thirteenth day of March, 1890.

The tax bills are based on the back tax book, which is made up from the delinquent list.   The statute (sec. 7669, R. S. 1889) makes it the duty of the county court to examine the delinquent list when returned by the collector, correct the same, and cause the corrected list to be certified by the county clerk and filed in his office. It has been held by this court that a failure of the county court to examine, correct and cause the list to be certified is sufficient to overcome the *prima facie* case made by the tax bills, since they are based on books which are based upon this delinquent list.   *State ex rel. v. Scott*, 96 Mo. 72; *State ex rel. v. Hurt*, 113 Mo. 90; *State ex rel. v. Hutchinson*, 116 Mo. 399.

The court had the undoubted right and power to amend its former record so as to make it conform to the facts.   But it is said a record can only be amended

at a subsequent term, where the minutes of the judge or clerk, or some paper filed in the cause, show the facts from which the amendment can be made. Such is the rule in this state, though a different rule prevails in some courts. When, however, a *nunc pro tunc* order has been made and is offered in evidence in another suit, the presumption is that it was made and entered upon sufficient evidence. *Allen v. Sales*, 56 Mo. 28; *Belkins v. Rhodes*, 76 Mo. 643; 1 Freeman on Judgments [4 Ed.], sec 67. Now there is no evidence in this case to overcome this presumption, for the minutes of the clerk were not offered in evidence. Indeed there was no effort made to show that the amending order was not made on sufficient evidence. The *nunc pro tunc* order stands as a valid order, so that the tax bills still have their *prima facie* effect as evidence, an effect given to them by the statute.

2. A further defense made to all the taxes sued for is that the assessment for 1888 and 1889 is void, because the county board of equalization did not meet at the proper time and place. The facts bearing upon this issue and upon the further issue that the defendant was deprived of a hearing before that board are to the following effect:

The county board of equalization met at the office of the county clerk in Kansas City on Monday, the third day of April, 1888, and made an order stating that it would meet at Kansas City on the fifth and continue in session until the fourteenth; that it would meet at Independence on the sixteenth and continue in session there for four days. The same order states that the board of appeals would meet at Kansas City on the twenty-third and continue in session at that place four days, and that it would meet at Independence on the twenty-seventh and continue in session two days, for the purpose of hearing appeals.

The board held sessions and transacted business at Kansas City from the fifth to the twentieth instead of the fourteenth.  On the twentieth it adjourned to meet at Independence on the twenty-first.  The record made at that place is in these words:  "Independence, Mo., Saturday morning, April 21, 1888.  Board met in county court room pursuant to adjournment; present a full board.  On motion the board of equalization adjourned *sine die.*"

The board, calling itself a board of appeals, convened again at Kansas City on Monday the twenty-third of April, 1888, and transacted business until the twenty-sixth, when it adjourned to meet at Independence on the twenty-eighth.  It met at that place and transacted business on the twenty-eighth and thirtieth of that month.

Kansas City is in range 33.  The evidence shows it was the custom of the board to consider assessments in that range only when sitting at that place, and to consider assessments in all ranges east of 33, when sitting at Independence, the county seat.  The defendant's lands are in a range east of 33 and are near the city of Independence.

The evidence shows that the board of equalization did not hold its session in the county clerk's office at Independence, but held the same there in a court room in the courthouse.  The clerk's office is in the same building.  The defendant did not appear before the board at any time while it was in session at Kansas City.  The evidence of one member of the board is that defendant and several other persons appeared before the board while it was in session on the twenty-first at Independence as a board of equalization, and that the defendant there complained that his lands had been assessed too high.  The evidence of the defendant is that he did not appear before the board

at that time, but he did appear before it on the twenty-eighth, when it was sitting as a board of appeals. He says he was told by members of the board that they had no time to hear his complaint.

The statute makes it the duty of the county board of equalization to meet "at the office of the county clerk on the first Monday in April of each year." The board, it will be seen, met and organized at the proper time, but it is said it should have met at Independence, the county seat of Jackson county, and not at Kansas City. The fifth section of the act of twenty-first of March, 1873 (Acts of 1873, p. 155), provides for holding terms of the county court at Kansas City, as well as at Independence. The power thus conferred upon the court to hold terms at Kansas City, was not, in our opinion, repealed by the act of twenty-seventh of April, 1877. It was, therefore, the duty of the county court, under the terms of sections 3428 and 3429, Revised Statutes, 1889, to establish, and it did establish, "a branch county clerk's office," at Kansas City. According to the second of these sections the records of the proceedings had at Kansas City are to be kept and preserved at that place. That section provides further that "all acts done and performed at such place shall have the same force and effect as if done at the county seat." It is true the county board of equalization, though composed in part of the justices of the county court is a different body from the county court. But it is plain to be seen, from what has been said, there are two county clerk's offices in Jackson county, one at Kansas City and the other at Independence, both established pursuant to law. It was competent for the board of equalization to meet and organize at either of these offices and to transact business at either or both places. The two offices were created for the convenience of the people, and to say that the board

could only hold its sessions at the county seat is to disregard the object had in view in establishing the two offices. The board of equalization, therefore, met and organized at the proper time and place.

. The statute says nothing about the power of the board to adjourn from time to time, but the want of such a provision in the law is immaterial; for the board had the inherent power to adjourn from time to time as the business before it might in its judgment demand. *Black v. McGonigle*, 103 Mo. 193–200. It follows from what has been before said that the board had the right and power to adjourn from Kansas City to Independence as it did. The fact that the board at its first meeting at Kansas City declared its intention to meet at Independence on the fourteenth when it did not meet at that place until the twenty-first is immaterial. The orders of adjournment made from day to day after the fourteenth had the effect to modify the order made on the third.

But it is said the session held at Independence was illegal because held in the court room and not in the county clerk's office, and so the trial court held. We think this is a too technical construction of the law. The court room and the clerk's office were both in the same building and this building was the county courthouse. There is nothing in the present case to show that anyone was, or was likely to be, misled by the fact that the board held its session in the more suitable and commodious room. Assessments are not to be overthrown on such technical grounds.

But it is again urged that, though the board held its sessions at the proper times and places, still the defendant was denied a hearing because the board transacted no business at Independence so that he could not be heard there, and that he could not be heard at Kansas City because it was the practice and

custom to consider assessments of property in range 33 only, when sitting at that place. The board had the power to hear complaints from any part of the county when sitting at Kansas City, and the defendant could have appeared before it at that place if he had desired to do so. The custom which had grown up can not overthrow the plain terms of the law. The custom constitutes no excuse for not appearing at Kansas City.

While the record kept by the board at Independence shows no orders made at the meeting held at that place, save the convening and adjourning orders, there is evidence to the effect that defendant and others appeared and presented their complaints. The fact that the board made no orders, either raising or decreasing assessments, does not show that the defendant was deprived of a hearing. No instructions were asked or given on this issue and we need say no more on the subject.

3. A far more serious question arises out of the action taken by the state board of equalization. It may be stated here that the assessment made in 1887, which came before the county board of equalization and before the state board of equalization in 1888, constituted the real estate assessment for both of the years 1888 and 1889. The following orders were made by the state board of equalization on the twenty-second of March, 1888:

"Mr. McGrath moved to reduce the valuation of lands in Jackson county twenty-five per cent. and town lots fifty per cent. A division of the question being called for, and the question being on the motion to reduce land twenty-five per cent., and the ayes and noes being demanded, the motion was carried by the following vote: * * * The question being on the motion to reduce town lots fifty per cent., and the ayes

and noes being demanded, the motion was carried, by the following vote: * * *"

The county board of equalization made the following order on the thirtieth day of April, 1888:

"It is ordered by the board that the assessor in correcting the assessor's books on real estate, place the valuation on town lots at one-half amount, and on acre property at three-fourths of amount as fixed by the county board of equalization, it being the intention of the board that the action of the state board should be based on the assessment after correction by county board of equalization."

The contention made by the plaintiff that the county board of equalization made the action of the state board its own act can not be sustained. The county board in its order did not undertake to reduce the value of any property. The order expresses no judgment or decision of that subject. It assumes that the state board had made the reductions, and simply directs the assessor how to make the corrections. It directs him to make the deductions ordered by the state board on the assessment after the changes ordered by the county board are made. The orders of the state board can not be bolstered up by the county board order.

The question then is whether the state board of equalization has any power to distinguish between classes of real property in the same county. We are not, it is to be observed here, dealing with the powers of that board when assessing railroad property. We are dealing with its powers as a board of equalization only. Section 18 of article 10 of the constitution provides that there shall be a state board of equalization to be composed of designated state officers, and declares that "the duty of said board shall be to adjust and equalize the valuation of real, and personal prop-

erty among the several counties in this state, and it shall perform such other duties as are or may be prescribed by law.''

Section 7514, Revised Statutes, 1889, provides that this board shall equalize the valuation of property ''among the respective counties in the following manner to-wit, *first*, they shall add to the valuation of the property, real or personal, in each county, which they believe is valued below its true value in money, such per centum in each case as will raise it to its true value; *second*, they shall deduct from the valuation of the property, real or personal of each county which they believe to be valued above its real value in money, such per centum as will reduce the same, in each case to its true value.''

The meaning of this statute, it seems to us, is clear. It gives the board power to equalize the value of property, real or personal, among the counties, but it gives that board no power to go into any county and equalize the value of parcels or classes of real estate therein. That is a matter confided by the law to the county board of equalization. The powers of the two boards are entirely different. The state board deals with the entire county assessment on real as on personal property, while the county board deals with individual assessments. The state board may, no doubt, raise or decrease by a uniform per centum the valuation on all lands in a county, without changing the valuation on personal property; or it may raise or decrease by a uniform per centum the valuation of all personal property in a county, without disturbing the valuation of real property; but it has nothing to do with adjusting the values of different parcels of land in the same county. Inequalities between parcels of land or classes of land in the same county are matters within the exclusive jurisdiction of the county board. The

state board has nothing to do with them.   *St. Joseph Lead Co. v. Simms*, 108 Mo. 222;  *Wells, Fargo & Co. v. Board of Equalization*, 56 Cal. 194.   The first clause of that part of the constitution before quoted is no doubt self-enforcing, but it is no broader or more comprehensive than the statute.

A board of equalization in performing its duties, acts judicially, and its orders can not be impeached collaterally, save for want of jurisdiction or for fraud. *Black v. McGonigle*, 103 Mo. 193, and cases cited; Black on Tax Titles [2 Ed.], sec. 141.   But it is a board of special and limited powers, and when it steps outside of its jurisdiction its acts are void.   We can but conclude that the state board had no power to make these orders and that they are void.   The question then arises what is to be the effect of this conclusion upon the judgment in this case, the taxes having been extended on the assessment as decreased by these void orders of the state board.

Where a board of equalization raises an assessment without jurisdiction, its action is void, and there is a good defense *pro tanto* in a suit to recover the taxes. *State ex rel. v. County Commissioners*, 14 Nev. 140; or the collection of the taxes on the increased valuation may be enjoined.   *Coolbaugh v. Huck*, 86 Ill. 600; or, if paid, may be recovered back.   *Avery v. East Saginaw*, 44 Mich. 587.   So the fact that a municipal board reduces the assessment on some property, when it has no authority to make the reductions, does not render the whole assessment void.   *Sherlock v. Winnetka*, 68 Ill. 530.   We are asked to say the unauthorized acts of the state board nullified and utterly destroyed the whole assessment of real property in Jackson. county for the years 1888 and 1889.   We are cited to no case which leads to such result, and we think it is not the law. The orders of the state board being void, because it

had no power conferred upon it by law to make them, the assessment returned by the assessor, as equalized by the county board of equalization, was the only legal assessment, and the taxes should have been extended on that assessment. The fact that the taxes were extended on a reduced valuation can constitute no defense in this action.

4.   Several instructions were asked by the defendant and refused by the court, to the effect that the plaintiff could not recover because of a defective and insufficient description of the property in the tax bills. The property is described in the tax bills substantially the same as in the assessment roll, and as the roll is the foundation of a valid assessment we will take the description set forth therein.   The parcel as to which most complaint is made is thus described:

| Name. | Acres. 100 | Subdivision. | S | T | R |
|-------|-------|--------------|---|---|---|
| H. M. Vaile. | 68 | S. end w. ½ nw., ex. 10 a. sw. cor. | 1 | 49 | 32 |

When the abbreviations are written out in full this description means sixty-eight acres off the south end of the west half of the northwest quarter, except ten acres in the southwest corner, of section 1, township 49, range 32.   From this description the land is easily located by taking the south seventy-eight acres of the west half of the northwest quarter, and then cutting off ten acres in a square in the southwest corner of the seventy-eight acres.   But it is said the description is uncertain and indefinite because it may be construed to mean "sixty-eight acres and the south end of the west half and the northeast quarter except ten acres in the southwest corner."   We do not see how the description can be thus construed when the headings of the columns are considered, and they are a part of the description. The description gives the number of acres, and then locates the land in the particular subdivision of the

section. The use of letters to designate the part of the section and township and range is allowed by the statute. It provides that certain letters may be used instead of words, that is to say, "T for township, R for range, L for lot, B for block, N for north, E for east, S for south, W for west, or any combination or combinations of the four last mentioned letters to denote parts of sections, lots, blocks or other subdivisions of real property."

The only remaining alleged defect in the description arises out of the abbreviations "ex." for except, "a" for acres and "cor." for corner. A description of lands by well understood abbreviations is sufficient. Cooley on Taxation [2 Ed.], p. 408; Black on Tax Titles [2 Ed.], sec. 114. And the above abbreviations are in every day use and well understood. This court, it is true, used the following language in *Lowe v. Ekey*, 83 Mo. 286, when speaking of the statute just mentioned: "It is quite obvious that under the maxim *expressio unius*, etc., letters can only be used in describing land, as provided in that section and not otherwise." This observation must be taken in connection with the letters used in that case. It was, we think, not intended by that remark to exclude the use of well understood abbreviations; for it is well settled law that the maxim is not one of universal application. The books say great caution is required in dealing with it. Broom's Legal Maxims [8 Ed.], 653; Endlich on the Int. of Statutes, secs. 397 to 399; Sutherland on Stat. Const., secs. 325 and 329. Says Endlich: "Whether the expression of one thing is to operate as the exclusion of another, is clearly a mere question of intention, to be gathered from the statute by the usual means and rules of interpretation." Sec. 399.

We think that it was not the intention of this stat-

Hanford v. Mass. Ben. Ass'n.

ute to exclude the use of well known abbreviations, and we, therefore, hold that the description in question is sufficient. The judgment is affirmed. All concur. BARCLAY, J., in the result.