Robert L. WOODSON, Appellant,

v.

CITY OF KANSAS CITY, Missouri, et al., Respondents.

No. WD 59773.

Missouri Court of Appeals, Western District.

June 25, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 25, 2002.

Robert L. Woodson, Kansas City, pro se.

Galen Beaufort, City Atty., Nelson V. Munoz, Asst. City Atty., Kansas City, for Respondents.

Before ELLIS, P.J., and EDWIN H. SMITH and HOWARD, JJ.

EDWIN H. SMITH, Judge.

Robert L. Woodson appeals from the judgment of the circuit court affirming the

decision of the Kansas City, Missouri, Property Maintenance Appeals Board (Board) affirming the order (demolition order) of the Neighborhood and Community Services Department (NCS) to demolish his garage located at 3259 Gillham Road, Kansas City, Jackson County, Missouri.

The appellant raises seven points on appeal attacking the Board's decision affirming the demolition order of the NCS. In Point I, he claims that the ordinances of the Kansas City, Missouri, Property Maintenance Code (PMC),[1] under which the NCS ordered his property demolished, were unconstitutional. In Points II and V, he claims that the Board's requisite findings of fact and conclusions of law in affirming the demolition order were deficient and did not support its decision. In Point III, he claims that the evidence did not support the Board's findings of fact and conclusions of law and that he was denied a fair hearing before the Board because, in order to make its case before the Board and to provide him with a fair hearing, the NCS was required, but failed, to call as a witness at the hearing before the Board the author of the demolition order, Paul Binner, the manager of the Dangerous Building Division (DBD) of the NCS. In Point IV, he claims that: (1) the demolition order did not contain the requisite findings of fact and conclusions of law as to the conditions or defects that caused his garage to be a dangerous building, as defined in § 56–532(a); and (2) the evidence was insufficient to find that the appellant's garage was damaged, decayed or deteriorated to a degree that it was not economically feasible to rehabilitate it, or it was not structurally safe, as required by § 56–533(3) for demolition. In Point VI, he claims that the Board, in affirming the

demolition order, considered irrelevant evidence concerning another building, denying him a fair hearing. In Point VII, he claims that the vote of the Board appearing of record did not support an affirmance of the demolition order.

We reverse and remand with directions.

### Facts

The appellant owns real property at 3259 Gillham Road, Kansas City, Jackson County, Missouri. Located on the property is a one-story commercial-type garage constructed of concrete blocks, which the appellant uses for storage. On February 11, 2000, Roger Stewart, an inspector with the DBD, inspected the storage garage. During this initial inspection, Stewart took photographs. He also completed a Dangerous Building Evaluation Form and a Feasibility Analysis Report. Subsequent inspections occurred on March 28 and July 12, with additional photographs being taken.

On February 25, 2000, pursuant to § 56–533(3), the manager of the DBD, Paul Binner, issued an order to demolish the appellant's garage based upon his findings that the garage was a dangerous building, as defined in § 56–532(a), that was damaged to a degree that it was not economically feasible to rehabilitate it. Copies of this demolition order were mailed to the appellant and posted on his garage.

On March 6, 2000, pursuant to § 56–537, the appellant appealed the demolition order to the Board. His appeal was heard on July 13, 2000. At the hearing, Stewart was the sole witness for the NCS. He testified as to the conditions that he found when he inspected the appellant's garage, including structural defects caused by a

---

**1.** All ordinance references to the PMC are to the KANSAS CITY, MO., CODE OF ORDINANCES

(1994), unless otherwise indicated.

tree growing into the structure. He also testified as to his findings with respect to the economic feasibility of rehabilitating the garage, to which the appellant objected, contending that the method used by Stewart to evaluate the building in determining whether it could be rehabilitated was improper. Several of the photographs of the garage taken during Stewart's inspections, as well as the Dangerous Building Evaluation Form and Feasibility Analysis Report completed by Stewart, were admitted. At the hearing, the appellant also presented evidence, consisting primarily of photographs and documents detailing the appellant's previous disputes with the City, the majority of which were irrelevant to the case before the Board. After considering the evidence, the Board voted 2–0 to affirm the demolition order.[2] On July 17, 2000, the Board issued its findings of fact and conclusions of law affirming the demolition order.

On August 15, 2000, the appellant filed a petition in the Circuit Court of Jackson County, Missouri, for judicial review, as authorized by § 536.100,[3] of the Board's decision affirming the demolition order. On February 13, 2001, the circuit court entered its judgment affirming the Board's decision.

This appeal follows.

## Standard of Review

 Actions, which are delegated by a municipality to a board or retained to itself to enforce an ordinance, are administrative, and, thus, are reviewable under the Missouri Administrative Procedure Act, codified in Chapter 536, RSMo. *Wrenn v. City of Kansas City*, 908 S.W.2d

747, 749 (Mo.App.1995). When a decision of an administrative agency or board in a contested case, as authorized by § 536.100, is appealed, we review the agency or board's decision, not the judgment of the circuit court. *Graves v. City of Joplin*, 48 S.W.3d 121, 124 (Mo.App.2001). The decision of the agency or board will be upheld unless it is not supported by competent and substantial evidence; it is arbitrary, capricious or unreasonable; it is an abuse of discretion; or it is otherwise unauthorized by law. *KV Pharm. Co. v. Mo. State Bd. of Pharmacy*, 43 S.W.3d 306, 310 (Mo. banc 2001) (*citing* § 536.140). In reviewing the decision of an agency or board, the evidence is viewed in its entirety together with all legitimate inferences drawn therefrom, in a light most favorable to the agency or board. *Graves*, 48 S.W.3d at 124.

## I.

In Point IV, the appellant claims, *inter alia*, that the Board erred in affirming the demolition order of the NCS because it did not contain, as required by § 56–535(1), findings of fact and conclusions of law as to the conditions or defects that caused his garage to be a dangerous building, as defined in § 56–532(a). Specifically, he claims that the NCS, in determining that his garage was a dangerous building necessitating demolition, was required, but failed, to include in its demolition order, findings as to the specific conditions or defects that existed in the garage that caused it to be dangerous. Because this claim is dispositive of the appellant's appeal, we discuss it alone.

 In ordering the demolition of the appellant's garage, the City was exercising

2. Although the City's brief indicates that the vote of the five Board members in attendance was "unanimous," the record reflects that it was a unanimous vote of those voting. The record reflects a 2–0 vote in favor of affirming

the demolition order. Apparently, three of the Board members abstained.

3. All statutory references are to RSMo 2000, unless otherwise indicated.

its police power. *Stahlberg v. Travelers Indem. Co.*, 568 S.W.2d 79, 85 (Mo.App. 1978). The control of this governmental function lies with the state. *City of Hamilton v. Pub. Water Supply Dist. No. 2 of Caldwell County*, 849 S.W.2d 96, 102 (Mo. App.1993). Inasmuch as a city is strictly a creature of the state, it has no inherent police power, but only that power expressly conferred by the state. *Id.* at 102–03. The state expresses its grant of such powers via our state constitution and statutes. *Crofton v. City of Kansas City*, 660 S.W.2d 709, 716 (Mo.App.1983). In that regard, the state, in § 67.400, authorizes cities such as Kansas City to "enact orders or ordinances to provide for vacation and the mandatory demolition of buildings and structures ... which are detrimental to the health, safety or welfare of the residents and declared to be a public nuisance." Pursuant to that statute, the City enacted Article V of the PMC, dealing with "Dangerous Buildings or Structures." In fact, § 56–531 expressly provides that the purpose of Article V is "to implement the provisions of RSMo 67.400 et seq."

■ As part of Article V of the PMC, § 56–535(1) was enacted. It sets out the requirements for an order to demolish a dangerous building, which reads:

> The director of neighborhood and community services shall issue an order to all parties of a building or structure determined to be a dangerous building.
>
> (1) The order shall contain the written findings of fact that caused the building to be determined to be a dangerous building. In accordance with the findings of fact, the order shall require the owner, or other parties, to vacate, close and secure, repair or demolish the building. The order shall allow up to 30 days for compliance. The order shall advise all parties of the right to appeal as provided in section 56–537.
>
> (2) The order shall be served upon all parties by regular United States mail or by personal service. If the party a [*sic*] to whom such order is addressed cannot be found after diligent effort to do so, service may be made upon such party by posting the order on the building or structure described in the order.

§ 56–535(1). The requirements of this section are obviously intended to satisfy the due process requirements found in Article I, § 10 of the Missouri Constitution and the Fourteenth Amendment of the U.S. Constitution concerning the taking of private property, which is the end result of an involuntary demolition of a building or structure by a political subdivision. Hence, as the appellant asserts, to comply with the mandate of § 56–535(1), the order to demolish his garage was required to contain findings of fact as to what caused the NCS to determine that it was a dangerous building requiring demolition. As to the findings mandated by § 56–535(1), the appellant contends that, given the definition of a "dangerous building" found in § 56–532(a), they would necessarily have to include findings as to the specific defects in his garage complained of by the NCS. We agree.

A "dangerous building," for purposes of the PMC, is defined in § 56–532(a) as:

> All buildings or structures, portions or parts of a building or remains of a building or structure which may have any of the defects enumerated herein or in the building code shall be deemed a dangerous building and a nuisance provided that such conditions or defects exist to the extent that they are detrimental to the life, health, property, safety or welfare of the public, or its occupants are endangered.

Section 56–532(a) sets forth twenty types or categories of defects that cause a building to be dangerous and subject to demoli-

tion.[4] Giving the language of this section its plain and ordinary meaning, *see City of Sugar Creek v. Reese*, 969 S.W.2d 888, 891 (Mo.App.1998) (stating that in interpreting an ordinance, we are to ascertain and give effect to the intent of the enacting body, and, in so doing, we are to give the language used its plain and ordinary mean-

4. The conditions or defects which can cause a building or structure to be classified as a dangerous building, according to Ordinance 56–532(a), include:

(1) The exterior walls or other vertical structural members list, lean or buckle to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base.

(2) A portion thereof has wrecked, warped, buckled or settled to such an extent that walls or other structural portions have materially less resistance to winds or snow than is required in the case of similar new construction.

(3) The building or structure, or any portion thereof, because of dilapidation, deterioration, decay, vandalism or faulty construction or the removal, movement, or instability of any portion of the ground necessary for the purpose of supporting such building or the deterioration, decay or inadequacy of its foundation or any other cause is likely to partially or completely collapse.

(4) The building or structure, exclusive of the foundation, shows substantial damage or deterioration of the supporting or non-supporting members, or enclosing or outside walls or wall coverings.

(5) The building or structure has improperly distributed loads upon the floors or roofs, or in which the same are overloaded or which have insufficient strength to be reasonably safe for the purpose used.

(6) A portion of the building has been damaged by fire, earthquake, tornado, wind, flood, vandals or any other cause, to such an extent that the structural strength or stability thereof is materially less than it was before such catastrophe or damage and is less than the minimum requirements of the building code for similar new construction.

(7) A door, aisle, passageway, stairway, fire escape or other means of egress is not of sufficient width or size, or is damaged, dilapidated, obstructed or otherwise unusable, or so arranged so as not to provide safe and adequate means of egress in case of fire or panic.

(8) A portion of the building or member or appurtenance thereof (e.g., porch, chimney, signs) is likely to fail, or to become detached or dislodged, or to collapse and thereby injure persons or damage property.

(9) The building or structure has any portion, member or appurtenance, ornamentation on the exterior thereof which is not of sufficient strength or stability, or is not so anchored, attached or fastened in place so as to be capable of safely resisting wind pressure, or snow or other loads.

(10) The building or structure, because of inadequate maintenance, dilapidation, decay, damage, faulty construction or arrangement, trash, filth, inadequate light, air ventilation or sanitation facilities, or otherwise is determined to be unsafe, unsanitary, unfit for human habitation, or in such a condition that is likely to cause sickness or disease.

(11) For any reason, the building or structure, or any portion thereof, is manifestly unsafe for the purpose for which it is being used.

(12) The building or structure or land it occupies exists or is maintained in violation of any specific requirement or prohibition applicable to such building or structure or land provided by this article or other applicable laws or ordinances of this state or city relating to the condition, use, location, maintenance of the building, structures or land.

(13) The building or structure has become an attractive nuisance to children or is open to unauthorized or unlawful entry.

(14) The building or structure because of obsolescence, dilapidated condition, deterioration, damage, trash and debris, unsafe exits, lack of sufficient fire-resistive construction, unsafe electrical wiring, gas connections, or heating apparatus, previous fires or any other cause is determined to be a fire hazard or is a fire hazard under chapter 26.

(15) The electrical system is totally or partially damaged, destroyed, removed or otherwise made inoperable or unsanitary.

(16) The plumbing system is totally or partially damaged, destroyed, removed or otherwise made inoperable or unsanitary.

(17) The mechanical system or any portion of the mechanical system is totally or par-

ing), to determine that a building is dangerous under the PMC, the NCS would not only have to find that there existed in the building one or more of the defects enumerated in § 56–532(a) or the building code, but that such defects were "detrimental to the life, health, property, safety or welfare of the public, or its occupants are endangered."[5] Given this definition of a dangerous building, it is clear to us, as the appellant asserts, that to satisfy the written-findings-of-fact mandate of § 56–535(1), a demolition order, such as the one ordering the demolition of his garage, must include written findings of fact setting forth the specific conditions or defects complained of and the extent to which they are "detrimental to the life, health, property, safety or welfare of the public, or its occupants are endangered."

▮▮▮▮▮ The demolition order issued by the NCS to demolish the appellant's ga-

> tially damaged, destroyed, removed or otherwise made inoperable or unsafe.
> (18) The building or structure, because of obsolescence, dilapidated condition, deterioration or damage, is detrimental to the sale, loan or taxable values of surrounding properties or which renders such surrounding properties uninsurable or which constitutes a blighting influence upon the neighborhood or which constitutes an eyesore so as to deprive owners or occupants of neighboring property of the beneficial use and enjoyment of their premises or which presents an appearance which is offensive to persons of ordinary sensibilities.
> (19) The building or structure is in such condition as to constitute a public nuisance known to the common law or in equity jurisprudence.
> (20) A portion of a building or structure remains on a site when construction or demolition work is abandoned.

5. Once a building is found to be a "dangerous building" under § 56–532(a), the NCS then is to determine whether the building should be vacated, repaired or demolished, using the standards found in § 56–553[sic], which reads:

> In any case where a building or structure is found to be a dangerous building, the

rage contained the following findings of fact:

1. Defects were found which relate to those defined in Section 56–532(a) 1 through 20 of the Property Maintenance Code, and attached as Exhibit A.

2. The building or structure is a dangerous building, a public nuisance, and is unsafe to occupy.

3. The structure is damaged, decayed, or deteriorated to a degree that it is not economically feasible to rehabilitate.

Exhibit A reads:

### VIOLATION:

**SEC. 56. 56–532(a)(10) C.O. UNSANITARY CONDITIONS, UNFIT, UNSAFE**

> following standards shall be used by the director of neighborhood and community services in ordering vacation, repair or demolition:
> (1) If the dangerous building is in such condition as to make it dangerous to the health, morals, safety or general welfare of the public or the occupants, it shall be ordered vacated.
> (2) If the dangerous building can reasonably be repaired so that it will no longer exist in violation of the terms of this article or the building code, it shall be ordered repaired. An order to repair may include a requirement to close and secure any or all exterior openings in accordance with section 56–317.
> (3) In any case where a dangerous building is damaged, decayed or deteriorated to a degree that it is not economically feasible to rehabilitate such building, or the building is not structurally safe, the building or any portion thereof shall be ordered demolished. An order to demolish may include a requirement to close and secure any or all exterior openings in accordance with section 56–317 until demolition can be accomplished.

The building or structure, because of inadequate maintenance, dilapidation, decay, damage, faulty construction or arrangement, trash, filth, inadequate light, air ventilation or sanitation facilities, or otherwise is determined to be unsafe, unsanitary, unfit for human habitation, or in such a condition that is likely to cause sickness or disease.

### SEC. 56. 56–532(a)(11) C.O. UNSAFE FOR PURPOSE IT IS USED

For any reason, the building or structure, or any portion thereof, is manifestly unsafe for the purpose for which it is being used.

### SEC. 56. 56–532(a)(12) C.O. VIOLATION OF CODE REQUIREMENTS

The building or structure or land it occupies exists or is maintained in violation of any specific requirement or prohibition applicable to such building or structure or land provided by this article or other applicable laws or ordinances of this state or city relating to the condition, use, location, maintenance of the building, structures or land.

### SEC. 56. 56–532(a)(18) C.O. DILAPIDATED, DETRIMENTAL TO AREA

The building or structure, because of obsolescence, dilapidated condition, deterioration or damage, is detrimental to the sale, loan or taxable values of surrounding properties or which renders such surrounding properties uninsurable or which constitutes a blighting influence upon the neighborhood or which constitutes an eyesore so as to deprive owners or occupants of neighboring property of the beneficial use and enjoyment of their premises or which presents an appearance which is offensive to persons of ordinary sensibilities.

### SEC. 56. 56–532(a)(19) C.O. PUBLIC NUISANCE

The building or structure is in such condition as to constitute a public nuisance known to the common law or in equity jurisprudence.

### SEC. 56. 56–532(a)(20) C.O. ABANDONED DEMOLITION DEBRIS

A portion of a building or structure remains on a site when construction or demolition work is abandoned.

As the appellant contends, these findings of the NCS do not comply with the written-findings mandate of § 56–535(1) in that they are merely conclusory and do not set forth the specific conditions or defects found by the NCS to exist in his garage making it dangerous and requiring its demolition. Because the order fails to make the requisite findings mandated by § 56–535(1), we must reverse and remand the case to the circuit court with directions for it to remand the case back to the Board with directions for it to remand the case to the NCS with directions to make the findings required by § 56–535(1). In making its findings, the NCS is free to hear and consider any additional evidence or argument it deems reasonable and necessary in order to make the required findings.[6]

6. As to the appellant's remaining points, they are rendered moot by our disposition of appellant's Point IV. Although we might otherwise review the appellant's claims of error in Points I and III in that they are likely to be raised on remand, we do not inasmuch as they are not preserved for our review in any event. In that regard, as to the appellant's constitutional challenge in Point I, his claim of error is not preserved in that he failed to designate the specific constitutional provisions he claims are violated by the ordinances challenged as is required to preserve a constitutional challenge. *Bezayiff v. City of St. Louis*, 963 S.W.2d 225, 230 (Mo.App.1997). And, as to his claim in Point III, the appellant fails to cite any authority or explain why none was cited, such that his claim was not preserved for our review. *Martin v. Morgan*, 61 S.W.3d 300, 302 (Mo.App.2001).

### Conclusion

The judgment of the circuit court affirming the decision of the Board affirming the demolition order of the NCS, ordering the demolition of the appellant's garage, is reversed and the case remanded to the court with directions for it to remand the case to the Board with directions for it to remand the case to the NCS with directions to make the findings required by § 56–535(1) in accordance with this opinion.

ELLIS, P.J., and HOWARD, J., concur.