

# In the Missouri Court of Appeals

## Western District

DAVE McNEILL,       )
      Respondent, )
v.           )    WD77732
           )
CITY OF KANSAS CITY, MO,  )   FILED: April 28, 2015
      Appellant. )

## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
### THE HONORABLE ROBERT M. SCHIEBER, JUDGE

### BEFORE DIVISION TWO: LISA WHITE HARDWICK, PRESIDING JUDGE,
### VICTOR C. HOWARD AND CYNTHIA L. MARTIN, JUDGES

The City of Kansas City ("City") appeals from the circuit court's judgment awarding Dave McNeill damages and prejudgment interest for the wrongful demolition of a building he owned. During the jury trial, the court excluded evidence of the City's order to demolish the building after finding that the order was legally insufficient and, therefore, irrelevant. The court also excluded the demolition order as a discovery sanction against the City. On appeal, the City contends that the circuit court lacked subject matter jurisdiction to find the demolition order invalid. The City further argues that the court erred in excluding the order because it was logically and legally relevant and its exclusion as a

discovery sanction was unjust.  Lastly, the City asserts that the court erred in awarding McNeill prejudgment interest.  For reasons explained herein, we affirm.

In the summer of 2008, McNeill purchased property containing a building located at 3519-25 Paseo Boulevard in Kansas City.  At the time of the purchase, the building was on the City's dangerous buildings list and had been since August 2001, when an order to demolish the building was issued by the City's Neighborhood and Community Services Department.  Within the first few months after purchasing the property, McNeill began to renovate the building as a multi-tenant residential property.  He obtained architectural plans, reframed the building, installed new subfloors, re-decked the roof, and demolished the building's brick and concrete front porch.  After McNeill's bank backed out of a construction loan, however, work on the building stopped while McNeill sought alternative financing.

In June 2009, the City sent a letter to McNeill instructing him to remove debris and weeds on the property.  On June 24, 2009, McNeill met with City inspectors to inspect the property.  During the meeting, McNeill showed the inspectors his plans for the property, explained his financing difficulties, and indicated that he was trying to obtain additional funding for the construction project.  The City inspectors directed McNeill to clean up a pile of debris from the porch demolition and get rid of the tall weeds on the property.  McNeill removed the debris and weeds and graded the yard in July 2009.  At that time, McNeill

---

[1] We have adopted some of the factual information from a previous appeal in this matter, *McNeill v. City of Kansas City*, 372 S.W.3d 906, 908-09 (Mo. App. 2012), without further citation.

2

received a preliminary commitment from a lender for a construction loan. On

August 8, 2009, the City demolished the building.

McNeill filed a petition for damages for wrongful demolition.[2] In a 2011 jury

trial, the jury found in favor of McNeill and awarded him $150,000 plus costs.[3]

The City asked for a new trial on the basis that the wrongful demolition verdict-

directing instruction was a roving commission. *See McNeill v. City of Kansas City*,

372 S.W.3d 906, 909 (Mo. App. 2012). The circuit court granted a new trial, and

McNeill appealed. *Id*. After finding that the jury instruction was, in fact, a roving

commission, we affirmed the circuit court's grant of a new trial. *Id*. at 912.

When the case went back to the circuit court in September 2012, McNeill

submitted a request for production of documents in which he sought, among other

things, all orders to demolish dangerous buildings issued by the City between

August 24, 2001, and August 8, 2009. On October 5, 2012, the City objected to

the request as overly broad and burdensome but stated that, without waiving this

objection, it would produce a sampling of such documents for McNeill's review.

On April 4, 2013, McNeill's counsel sent a Golden Rule letter to the City

demanding that the City produce the documents as soon as possible. Seven days

later, on April 11, 2013, McNeill filed a motion to enforce discovery. In his motion,

McNeill stated that his counsel had become aware of the case of *Woodson v. City*

---

[2] McNeill asserted other claims, but those claims were eventually abandoned or dismissed.

[3] The City had filed a counterclaim seeking costs, interest, and fees associated with the demolition of the building. The jury awarded the City no damages on its counterclaim, and the City did not appeal.

*of Kansas City*, 80 S.W.3d 6 (Mo. App. 2002). In *Woodson*, this court found that the demolition order in that case, which was identical to the demolition order in this case, did not contain findings that were mandated by the City's Property Maintenance Code ("PMC"). *Id*. at 13. Therefore, we reversed and remanded the case for the City's Neighborhood and Community Services Department to make the required findings of fact. *Id*. McNeill contended in his motion to enforce that the City changed its demolition order forms to address the deficiencies found in *Woodson* but "made a conscious decision not to halt demolitions based on Orders to Demolish which the City knew were invalid, including the August 24, 2001 Order to Demolish in this case." McNeill asserted that he needed the City to produce the *Woodson* demolition order and other demolition orders issued between August 24, 2001, and August 8, 2009, to prove this contention.

The City opposed McNeill's motion to enforce on the grounds that discovery was closed; McNeill had not allowed a reasonable amount of time after filing the Golden Rule letter for the City to respond before he filed the motion to enforce; and the City had offered McNeill the opportunity to inspect the requested documents, but he did not arrange a time to do so. On May 14, 2013, the circuit court denied McNeill's motion to enforce "for the reasons set forth in [the City]'s Suggestions in Opposition."

After the court denied his motion to enforce, McNeill continued to ask the City to respond to his request for documents, interrogatories, and requests to provide deposition times for City officials. The City responded to McNeill's

4

requests by telling him that it would not produce any witnesses for deposition or facilitate the viewing or production of further documents because the court had "ruled that discovery in this case is closed."

McNeill filed a motion to exclude the demolition order or, alternatively, to reconsider the order denying his motion to enforce discovery. In that motion, McNeill asked the court to exclude the demolition order as a discovery sanction against the City for failing to produce the other requested demolition orders. McNeill also filed a motion *in limine* to exclude the demolition order on the basis that it was a legally invalid order under *Woodson* and, therefore, irrelevant. The City filed suggestions in opposition to both motions.

The court entered an order granting McNeill's motion *in limine* to exclude the demolition order from trial. The court found that McNeill's motion to exclude the order as a discovery sanction was "well taken" because of the City's failure to produce documents showing the changes in its forms after the *Woodson* decision. The court further found that, because the demolition order in this case was identical to the form found legally insufficient in *Woodson*, it was also legally insufficient. Therefore, the court found that the order was "not relevant and would mislead and confuse the jury."

A second jury trial in this case was held in April 2014. After opening statements but before the presentation of evidence, the parties stipulated that the exclusion of the demolition order was sufficient to allow McNeill to make a submissible case for wrongful demolition. Without waiving its right to appeal the

5

exclusion of the demolition order, the City agreed to admit that it was liable for failing to follow the regulatory procedures established for demolishing a building.

The jury was advised of the City's admission of liability, and trial proceeded on the issue of damages only. The jury returned a verdict awarding McNeill damages of $55,000 for personal injuries and $151,000 for property damage. The court granted McNeill's request for prejudgment interest on the property damage award. Consequently, the court entered its judgment in favor of McNeill and against the City for a total of $206,000 in compensatory damages, $1,900.65 in court costs, and prejudgment interest on the $151,000 property damage award in the amount of 9% per annum from September 2, 2010 to June 2, 2014. The City appeals.

## ANALYSIS

The City's first two points on appeal concern the propriety of the circuit court's decision to exclude the demolition order after finding that the order was legally insufficient and, therefore, irrelevant. In Point I, the City contends the court lacked subject matter jurisdiction to consider the validity of the order because it was a final administrative order that was not subject to collateral attack. In Point II, the City argues that the court erred in excluding the order as irrelevant because it was a legally valid order and, furthermore, that excluding it as a discovery sanction was unjust. Because it is dispositive of both points, we will begin by addressing the validity of the demolition order and the circuit court's ability to consider its validity in the context of McNeill's wrongful demolition case.

6

In discussing judicial review of administrative actions in *Woodson*, 80

S.W.3d at 9, we observed that, "[a]ctions, which are delegated by a municipality

to a board . . . are administrative, and, thus, are reviewable under the Missouri

Administrative Procedure Act, codified in Chapter 536, RSMo."  Therefore, we held

that determinations by the City's Property Maintenance Appeals Board of the

Neighborhood and Community Services Department are subject to judicial review

pursuant to Section 536.100, RSMo.[4]  *Id*.

Here, McNeill's action was not filed pursuant to Section 536.100.  Instead,

it was a separate action for wrongful demolition.  Notwithstanding, Section

536.100 is still relevant.  Section 536.100 states, in pertinent part:

> Any person who has exhausted all administrative remedies provided
> by law and who is aggrieved by a final decision in a contested
> case . . . shall be entitled to judicial review thereof . . . *provided,*
> *however, that nothing in this chapter contained shall prevent any*
> *person from attacking any void order of an agency at any time or in*
> *any manner that would be proper in the absence of this section.*

(Emphasis added.)  In discussing the effect of the emphasized provision on the res

judicata and/or collateral estoppel effect of administrative decisions, the Missouri

Practice Series provides:

> The MAPA, however, contains a provision which may have the effect
> of negating traditional principles of res judicata.  Section 536.100
> concerns the circumstances which entitle one to judicial review of
> adjudication of a contested case and provides in part that "nothing in
> this chapter contained shall prevent any person from attacking any
> void order of an agency at any time or in any manner that would be
> proper in the absence of this section."  This presents the prospect of

---

[4] All statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2013
Cumulative Supplement.

relitigation, if the order in a contested case is so defective as to be "void." It has been noted that "[a] void judgment is one which is rendered by a tribunal acting without competency to render it, due to a lack of jurisdiction over the parties, the subject matter or the remedy ordered by that tribunal." Importantly, an erroneous determination in the prior adjudication alone is not sufficient to render an order void. "An erroneous judgment has the same effect as to res judicata as a correct one." *This limits the reach of the proviso in § 536.100 to cases in which there was no jurisdiction, or a judgment so vague and indefinite that it is void and considered unenforceable; if so, principles which normally preclude collateral attack will be put aside*.

20A ALFRED S. NEELY IV, MISSOURI PRACTICE SERIES, ADMINISTRATIVE PRACTICE & PROCEDURE, § 13.8 (4th ed. 2006) (emphasis added) (footnotes omitted). The question thus framed, then, is whether the demolition order issued in connection with the property now owned by McNeill was void, or whether it was merely erroneous. *Woodson* provides guidance on that question.

In *Woodson*, we noted that Section 67.400 affords the City the power to "'enact orders or ordinances to provide for vacation and the mandatory demolition of buildings and structures.'" 80 S.W.3d at 10 (quoting § 67.400). Pursuant to the authority of Section 67.400, the City enacted Article V of the PMC, which concerns "Dangerous Buildings or Structures." *Id*. Because Section 56-535(1) of the PMC requires that any order to demolish "contain the written findings of fact that caused the building to be determined to be a dangerous building" and Section 56-532(a) of the PMC describes the "twenty types or categories of defects that cause a building to be dangerous and subject to demolition," we concluded that:

[A] demolition order, such as the one ordering the demolition of [this] garage, must include written findings of fact setting forth the specific conditions or defects complained of and the extent to which they are

8

"detrimental to the life, health, property, safety or welfare of the public, or its occupants are endangered."

*Id.* at 11-12.

Though *Woodson* did not expressly so state, our holding makes it clear that the demolition order in that case was entered in excess of the City's delegated authority pursuant to its own duly-enacted ordinances. This holding implicates the City's subject matter jurisdiction or its power to enter and enforce the demolition order -- thereby rendering the demolition order void, and not merely erroneous or voidable. In *State ex rel. Johnson v. Merchants' & Miners' Bank*, 213 S.W. 815, 818 (Mo. banc 1919), the Supreme Court observed that, where "'a board of special and limited powers . . . steps outside of its jurisdiction[,] its acts are void.'" (quoting *State ex rel. Wyatt v. Vaile*, 26 S.W. 672, 675 (Mo. 1894)). In *Wyatt*, the Supreme Court held that taxes assessed pursuant to a void order (that is, an order that was entered in excess of the board of equalization's powers) constituted an assessment without jurisdiction. 26 S.W. at 675. Such an "action is void, and there is a good defense pro tanto in a suit to recover the taxes." *Id*. *Johnson* did clarify that the lack of jurisdiction must be plain from the face of the record in order to render an order or judgment in excess of an agency's jurisdiction void, and not merely voidable:

> If attacked for want of jurisdiction, the fact must appear on the face of the record. So appearing, the judgment is void, and a void judgment may be attacked collaterally. But if the judgment is only voidable and not void, it can only be attacked in a direct proceeding. This is hornbook law.

9

*Johnson*, 213 S.W. at 818. In our case, as in *Woodson*, the demolition order was facially in excess of the City's subject matter jurisdiction. Hence, the demolition order was void and, therefore, subject to collateral attack.

In *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 253-54 (Mo. banc 2009), the Supreme Court clarified the distinction between a circuit court's subject matter jurisdiction, which stems from the Missouri Constitution, and its authority to grant relief in a particular case, which comes from statutory or common law. We recognize that the applicability of *Webb* to administrative agency actions is somewhat unsettled. *See, e.g., Peer v. Mo. Bd. of Pharmacy*, 453 S.W.3d 798, 803 n.3 (Mo. App. 2014); *cf. M.A.H. v. Mo. Dep't of Soc. Servs.*, 447 S.W.3d 694, 697 n.1 (Mo. App. 2014). However, it is immaterial whether we characterize an act in excess of an agency's statutory powers as an act in excess of the agency's subject matter jurisdiction (as our cases routinely did pre-*Webb*), or simply as an act in excess of the agency's authority. In either case, the act is a legal nullity, as an agency has no power to act except as authorized. Because an agency has no inherent authority derived from the constitution (as courts do), it is illogical to conclude that *Webb* operated to convert acts in excess of an agency's powers to be merely erroneous, and not void. We acknowledged the rationale for such a conclusion (without discussing *Webb*, of course) in *Woodson*. We observed that "a city is strictly a creature of the state, it has no inherent police power, but only the power expressly conferred by the state" through the state constitution and statutes. *Woodson*, 80 S.W.3d at 10.

10

Moreover, even if *Woodson* cannot be read to hold that the City acted in excess of its subject matter jurisdiction or its authority, *Woodson* must, at a minimum, be read to hold that the demolition order was invalid because it was vague and non-specific. Specifically, we held in *Woodson* that "the[ ] findings of the [Neighborhood and Community Services Department] do not comply with the written-findings mandate of § 56-535(1) in that they are merely conclusory and do not set forth the specific conditions or defects found by the [Neighborhood and Community Services Department] to exist in [this] garage making it dangerous and requiring its demolition." *Id*. at 13. In *Brown v. Color Coating, Inc.*, 867 S.W.2d 242, 244 (Mo. App. 1993), the court held that "[a] judgment which is indefinite is void and unenforceable" and, consequently, subject to collateral attack or impeachment at any time.

Here, the demolition order was virtually indistinguishable from the demolition order in *Woodson*. The demolition order was facially void on the record because it exceeded the City's police powers as set forth in the PMC and was indefinite in light of the PMC's findings requirement. Therefore, the demolition order was subject to collateral attack. The court did not err in considering the validity of the demolition order in McNeill's wrongful demolition proceeding.

Because the demolition order was void, it was not logically relevant to the wrongful demolition proceeding. "'Evidence is logically relevant if it tends to prove or disprove a fact in issue or corroborates other evidence.'" *Eagle Star Group, Inc. v. Marcus*, 334 S.W.3d 548, 557 (Mo. App. 2010) (citation omitted). The void

11

demolition order had no probative value on the issue of the City's adherence to the demolition procedures required by statute and ordinance. Indeed, the void order had no probative value on any issue in the case. Hence, the court did not abuse its discretion in excluding the demolition as irrelevant. Having found that the demolition order was properly excluded on this basis, we need not address the City's claim that the court erred in excluding the order as a discovery sanction. Points I and II are denied.

In Point III, the City contends the court erred in awarding McNeill prejudgment interest on the $151,000 property damage award pursuant to Section 408.020. The City argues that the provisions of Section 408.020 apply only to contract or other liquidated claims and not to McNeill's wrongful demolition claim. The City asserts that McNeill's claim was a statutory tort and, therefore, he had to meet the requirements of Section 408.040 to be entitled to prejudgment interest, which he failed to do.

Whether a party is entitled to prejudgment interest under Section 408.020 is a question of law, which we review *de novo*. *Mitchell v. Residential Funding Corp.*, 334 S.W.3d 477, 508 (Mo. App. 2010). "'Determination of the right to prejudgment interest is reviewed de novo because it is primarily a question of statutory interpretation and its application to undisputed facts.'" *Id*. at 508-09 (quoting *Children Int'l v. Ammon Painting Co.*, 215 S.W.3d 194, 202 (Mo. App. 2006)).

12

Section 408.020 provides that creditors are allowed to receive interest for, among other things, all moneys "on accounts after they become due and demand of payment is made." As used in this statute, the word "account" is not limited to its traditional meaning but is considered equivalent to a "claim" or a "demand." *Children Int'l*, 215 S.W.3d at 202 n.11.

In his motion for prejudgment interest, McNeill argued that he was entitled to prejudgment interest because the wrongful demolition was similar to an inverse condemnation or indirect taking, "where the government takes or damages land, sometimes unintentionally, without going through an official process." *Akers v. City of Oak Grove*, 246 S.W.3d 916, 919 (Mo. banc 2008). In *Akers*, an overload in the city's sewer system damaged the plaintiffs' apartment building. *Id*. After the court awarded the plaintiffs damages and prejudgment interest, the city appealed the prejudgment interest award. *Id*. On appeal, the Supreme Court stated that the city's actions constituted an indirect taking under article I, section 26 of the Missouri Constitution. *Id*. Therefore, the Court found that an award of prejudgment interest was appropriate, as the plaintiffs were "'entitled to be put in as good a position pecuniarily as if [their] property had not been taken.'" *Id*. (quoting *Olson v. United States*, 292 U.S. 246, 255 (1934)).

The City contends that its wrongful demolition of McNeill's building cannot be characterized as an indirect taking because this court considered and rejected such a characterization in *City of Kansas City v. Jordan*, 174 S.W.3d 25, 48-49 (Mo. App. 2005). We disagree. While it is true that, in *Jordan*, this court found

13

that the plaintiff's reliance on takings cases to support his wrongful demolition claim was misplaced, this finding was based on our determination that the city had properly exercised its police power in demolishing the plaintiff's building. *Id*. at 48. In so holding, we noted that "'[a] *valid exercise* of the police power is not a taking of private property for public use.'" *Id*. (emphasis added) (citations omitted). Here, the City acted in excess of its jurisdiction or authority. Thus, the demolition of McNeill's building was not a valid exercise of police power. McNeill's wrongful demolition claim can be properly characterized as an indirect taking for purposes of awarding prejudgment interest.

The City argues that, even if we find, as we have, that Section 408.020 and not Section 408.040 applied to McNeill's wrongful demolition claim, he was still not entitled to prejudgment interest because his claim was not liquidated. "For a claim to be liquidated, it must be fixed and determined or readily determinable, but it is sufficient if the amount due is ascertainable by computation or by a recognized standard." *Hawk Isolutions Group, Inc. v. Morris*, 288 S.W.3d 758, 762 (Mo. App. 2009). "When the parties dispute the measure of damages, the claim is not liquidated and prejudgment interest is not appropriate." *Comens v. SSM St. Charles Clinic Med. Group, Inc.*, 335 S.W.3d 76, 81 (Mo. App. 2011).

The record indicates that, with regard to McNeill's claim for property damages, the parties agreed that the measure of damages was the building's fair market value. Although the parties disagreed about the amount of the building's value, "[a]n exact calculation of damages need not be presented in order for the

14

claim to be considered liquidated" for purposes of awarding prejudgment interest. *Id.* at 82. "Damages may still be ascertainable, even in the face of 'a dispute over monetary value or the parties' experts compute different estimates of the loss.'" *Id*. (citation omitted). The circuit court did not err in awarding McNeill prejudgment interest on the property damage award.[5] Point III is denied.

## CONCLUSION

We affirm the circuit court's judgment.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.

---

[5] The City further challenges the prejudgment interest award on the basis that it afforded McNeill a double recovery, because the jury had already compensated him for the lost use of his building in its damages award. The City did not raise this argument in the circuit court. Therefore, it is not preserved for appeal, and any review would be only for plain error. *Realty Res., Inc. v. True Docugraphics, Inc.*, 312 S.W.3d 393, 400 (Mo. App. 2010). Plain error review is rarely granted in civil cases. *Goltz v. Masten*, 333 S.W.3d 522, 524 (Mo. App. 2011). When deciding whether to exercise our discretion to provide plain error review, we look to "whether there facially appears substantial grounds for believing that the trial court committed error that is evident, obvious and clear, which resulted in manifest injustice or a miscarriage of justice." *Cohen v. Express Fin. Servs., Inc.*, 145 S.W.3d 857, 864 (Mo. App. 2004). The City has not requested plain error review, and it has not demonstrated "an evident, obvious, or clear error . . . so as to justify plain error review." *Hogan v. Bd. of Police Comm'rs of Kansas City*, 337 S.W.3d 124, 135 (Mo. App. 2011).

15